# Lonsdale's Estate.

An assignment of choses in action, without valuable consideration, designed to take effect at the death of the assignor, and where such choses in action are not delivered until after the assignor has become insane, passes no title to the assignees.

Such an assignment will be set aside, if it appear that it was made for the purpose of defrauding the wife of the assignor of the portion of his estate confirmed upon her by law.

APPEAL from the decree of the Orphans' Court of *Allegheny county.*

A. B. McCalmont, Esq., the auditor appointed by the court, made the following report:—

Thomas Lonsdale made his last will and testament on the 20th day of August, 1847. By that will he bequeathed to his wife the sum of $100 a year in lieu of dower, the payment of which was to cease in the event of her marrying again. The rest of his estate, after payment of debts, he devised and bequeathed in equal shares to his four brothers in England, who are hereinafter more particularly named. He also appointed Peter Bates, Esq., and Richard Brown, his executors. Thomas Lonsdale died on the 25th day of June, 1852, leaving a widow, Susan Lonsdale, the exceptant, and no issue.

On the 17th of August, 1852, Susan Lonsdale, the widow, gave written notice to the executors that she declined taking any share under the will of Thomas Lonsdale, but that she claimed her dower at common law, and her share of the personal estate under the intestate laws.

On the 14th day of July, A. D. 1851, Thomas Lonsdale was the owner and holder of certain bonds, secured by mortgages regularly recorded, mentioned in the exceptions filed to the account, but not included in the account. The exceptant claims that the accountants should have charged themselves with the amount of these bonds and mortgages as assets of the estate; and this claim, which is resisted by the accountants, forms the only question for decision in the exceptions filed.

[Lonsdale's Estate.]

The bonds and mortgages in question were as follows:—

1. Frederick Beckert, ⎫ Mortgage dated Oct. 1, 1847.
          to             ⎬ Recorded in vol. 15, at page 10.
   Thomas Lonsdale.      ⎭ Recites bond for penal sum of      $1368
                           Real debt      .      .        684
                           Payable Oct. 1, 1852, on, or before  342
                              "      "   1, 1857, on, or before  342
                 Interest payable on 1st of October annually.

On the 14th day of July, A. D. 1851, Thomas Lonsdale executed an agreement on the margin of the page upon which this mortgage was recorded in the following words:—

"I, Thomas Lonsdale, for value received, do hereby assign, transfer, and set over all my right, title, interest, and claim of this mortgage unto Peter Bates, and Richard Brown, in trust for my brothers, Christopher Lonsdale, William Lonsdale, Henry Lonsdale, and Robert Lonsdale, of West Riding, Yorkshire, England.

"Witness my hand and seal this 14th day of July, A. D. 1851."
          (Signed)            THOMAS LONSDALE. [Seal.]

Bates and Brown, the accountants, acknowledged satisfaction in full of this mortgage, July 11, 1853, as trustees of the four brothers of Thomas Lonsdale.

2. The next mortgage is as follows, and is recorded in volume 14, at page 103:—

Christian Beckert, ⎫ Mortgage, dated Oct. 1, 1847.
          to        ⎬ Recites bond for penal sum of      $2492
   Thomas Lonsdale. ⎭ Real debt      .      .      1246
                      Payable Oct. 1, 1857.
                      Interest payable half-yearly.

On the margin of this mortgage as recorded, there is an assignment in the same words as the last, and dated on the same day, viz.: July 14, 1851, and signed by Thomas Lonsdale.

On the margin of this recorded mortgage there is a receipt for $400, executed by Bates and Brown as trustees under seal, dated August 4, 1855.

3. The third mortgage is recorded in vol. 13, at page 340.

Emanuel Reis et al. Trustees ⎫ Dated June 7, 1847.
   of the Besalmen Society,   ⎪ Penalty .      .      . $450
          to                  ⎬ Real debt      .      . 225
   Thomas Lonsdale.           ⎪ Payable June 7, 1867.
                              ⎭ Int. payable June 7, annually.

Receipts on this mortgage to the amount of $175, have been

entered on the margin of the record at various dates, by Bates and Brown as trustees, viz. :—

| | |
|---|---|
| July 19, 1851 . . . . . | $40 |
| Sept. 4, 1852 . . . . . | 35 |
| July 5, 1855 . . . . . | 50 |
| July 12, 1856 . . . . . | 50 |

The auditor also finds from the evidence, that the transfer or assignment of the mortgages in question was made by Thomas Lonsdale, for no other consideration than that of natural affection for his brothers, and a somewhat unnatural antipathy to his wife. After the date of the assignments of the mortgages, he continued to retain the possession of the bonds which accompanied them. He also, by himself and his agents, received the accruing interest after that date. The object of the arrangement was to deprive his wife, the exceptant, of the share in his personal estate to which she would be entitled notwithstanding the will, by the eleventh section of the act of 11th April, 1848; and perhaps, also, to avoid payment of the collateral inheritance tax, though the latter fact does not appear from the evidence. The auditor finds also, that the testator retained possession of the bonds and mortgages assigned on the 14th day of July, 1851, until the 22d day of May, A. D. 1852, on which latter day he delivered the same to Peter Bates, Esq., one of the accountants (with the exception of the mortgage of Reis *et al.* to Thomas Lonsdale). It appears, also, from the evidence, and your auditor so finds, notwithstanding some conflict of testimony, that on the 22d day of May, 1852, when the said Beckert bonds were delivered, the said Thomas Lonsdale was of unsound mind, and that Peter Bates was an agent for the said Thomas Lonsdale at that time, and previously in the general management of his business affairs.

The auditor also finds that the transfer of the several mortgages enumerated, made on the 14th day of July, 1851, was without any valuable consideration, and was not intended to take effect in enjoyment until after the death of the said Thomas Lonsdale. The Reis mortgage is to be excepted.

The above facts are, as your auditor conceives, legitimate inferences from the evidence submitted, and seem to be the material facts in the case. But, inasmuch as the court may be better satisfied with an inspection of the original evidence, the same is respectfully submitted, and the attention of your honors is invited to the portions of it from which the foregoing inferences of fact are deduced, in order that if there be any error in making such deductions, it may be the more readily perceived and corrected.

The auditor has arrived at the conclusion that the assignments of July 14, 1851, were without valuable consideration, and intended to operate as a gift in the face of the fact that the assign-

ments are under seal, and expressed to be for value received. This inference is made from the relative condition, conduct, and location of the parties. Thomas Lonsdale was in good circumstances, and appears, so far as we can see from the accounts, to have been out of debt. He had but little communication with his brothers who resided in England, and who do not appear to have had any transactions with him from which an indebtedness on his part would be likely to arise. Mrs. Anderson says she once wrote to his brothers for him, that they should have nothing from him until after his death. Such language would not naturally be used by a debtor. There appears to have been no person in this country to represent the interest of these brothers. Had there been a pecuniary obligation to them on the part of Thomas Lonsdale, the transfer of the mortgages would have been attended with other circumstances than such as actually did attend it. It would have appeared as an act in which two parties were uniting, instead of appearing as it does now, as the result of an impulse acting on one mind alone. Had it been a business transaction for a valuable consideration, the assignor would not have retained the bonds, the principal evidences of indebtedness, and would not have continued to receive the accruing interest upon them. Upon the whole, the auditor is satisfied that there is enough in the case to rebut the evidence of consideration arriving from the form of the assignments.

In the language of more cases than one, assignment of *choses in action* have been said to be executory contracts, which are not to be enforced without consideration.

If the above conclusion be warranted by the evidence, there can be little difficulty in arriving at the additional inference, that the gift was not intended to take effect presently; but that it was designed to be enjoyed after the death of the testator. For on this point the declarations of the testator to third persons are evidence. It was a matter within his own control, and the question is solely one as to his intention. The testimony of Mrs. Vick as to his language, and probably on the very day of making the assignment—the testimony of Mrs. Anderson and of Beckert as to Lonsdale's intentions with respect to his brothers in England, are confirmed by the undeniable fact, that he retained possession of the bonds, and received interest as before; and this testimony and this fact point alike to the inference, that Lonsdale did not intend that his brothers should have anything during his life.

The condition of the mind of Thomas Lonsdale, at the date of making the assignment on the back of the Beckert bond, is perhaps, however, a material inquiry; and your auditor has carefully compared the testimony in relation to that fact. He has, however, arrived at the conclusion already stated, that on the 22d May, A. D. 1852, the said Thomas Lonsdale was not of sound mind, and

was incapable of entering into any contract as a party thereto. The evidence, it is true, on this point, is somewhat conflicting. Six or seven witnesses declare that during the entire last year of his life, he was mentally incapacitated from attending to business. Six or seven on the other side seem to think that he was at least, at times rational enough. Concerning his mental condition on the 22d of May, there is also some discrepancy. The attesting witnesses to his signature are Earsman and Sanders. Earsman, who had not seen him for a long time, says that he saw nothing wrong with his mind, but that he had very little opportunity of judging. Sanders says that Lonsdale was as sane as he ever was, but that he looked as if he had just come off a spree. Dr. John Dickson, however, says among other things :—

"I commenced to attend him (Lonsdale), May 19, 1852. I continued up until the 25th June, 1852. From the 19th May, 1852, until he died, he was not of sufficiently sound mind to be able to transact business." And on cross-examination : "I think my brother visited him some days, and there was some days that neither of us visited him. We suspended visits between the 26th day of May and the 15th of June." He also says, "When I ceased visiting him on the 26th of May, I did not consider him mentally any better than when I first saw him."

Dr. Thomas Dickson says, after stating that he was called on to see Lonsdale, on the 19th of May, 1852, "I only saw him about three times. My brother attended him. I found him on the 19th of May suffering from *mania a potu.* I don't recollect when I saw him last. He was ill from the 15th to the 26th of June. We were there from the 19th to the 26th of May. * * I called on the 20th of May. He was always deranged when I saw him ;" and again he says, "I do not think, as a medical man, from what I saw of him on the 19th and 20th, that he could have been capable of transacting business on the 22d."

It would appear from this that Dr. John Dickson must have visited Lonsdale on the very day that the assignment on the Beckert bond, the larger one, was executed ; that he visited him on the 21st, 22d, 23d, 24th, 25th, and 26th of May, and when he ceased visiting him, on the 26th, Lonsdale was mentally no better. Had Lonsdale made his will on the 22d, it might have been broken on the ground of his insanity. The weight of the evidence, in the opinion of your auditor, establishes the conclusion that Lonsdale, at the time of the delivery to Bates of the Beckert bond for $1246, was a person of unsound mind.

Had he even been sane, the delivery at that time would have hardly been sufficient to rebut the other evidence, that his intention was to make the gift take effect at his death. Bates was his agent, as well as the trustee named in the assignment. He was also one of the executors named in the will, and the donor was in

[Lonsdale's Estate.]

his last illness. If the auditor should have difficulty in determining as to the character in which Bates received the bonds, it is no more than Bates seems to have experienced himself, for we find him and Brown, on the first day of April, 1853, almost a year after the testator's death, receipting for interest on one of these bonds, the larger one, in the capacity of executor.

Your auditor, therefore, finding as matter of fact that the assignment of the Beckert mortgages of July 14, 1851, was without valuable consideration, and that it was not intended to pass any immediate interest to the four brothers, but that it was on the contrary designed to take effect at the death of Thomas Lonsdale, decides that the said Beckert bonds were a part of the decedent's estate at the time of his death, and that, as such, they should be accounted for by the executors.

Concerning the mortgage from Reis *et al.* to Thomas Lonsdale, the case is different. Very little evidence has been given in relation to it. But it appears that Bates and Brown, as trustees, received payment upon it during the lifetime of Lonsdale. The transfer of this mortgage, which does not appear to be accompanied by any bond, was doubtless without any other consideration than that of natural affection; and it is contended by the counsel for the exceptant that a husband, since the Act of 1848, above cited, has no right to give away any portion of his personal property, with intent to deprive his wife of her share, as secured by the act. The auditor decides differently. He maintains that a husband can dispose of his personal property during his lifetime, since the passage of the Act of 1848, in the same manner as before its enactment. The right secured by that act to the widow, to have a certain portion of her husband's personal property, whether he dies testate or intestate, does not give the wife a vested interest in it during the lifetime of the husband, so as to enable her to restrain his power of disposing of it in any legal manner. He is free even to make an absolute gift of it, but he cannot make a gift on such conditions that he shall be at liberty to use and enjoy the estate as before, and that his donee shall have a good title to it on his decease. A will in writing, executed according to a prescribed form, is the only means by which such a disposition of property can be made. The transfer of the bonds and mortgages in this case cannot be considered as a *donatio causa mortis*. It was not made with a view to impending dissolution. It was simply an effort of Thomas Lonsdale to control the destination of these choses in action after his death, and to maintain his power over them during life, without resorting to a will which would not enable him to confine his wife to the limited allowance which he had in view. He wished to accomplish what his will in 1847 would have accomplished, as the law then stood. Had the gift been absolute, in July, 1851, and accompanied by a delivery of the bonds, it would have been good even as against the

widow; but accompanied as it was with a manifest purpose to retain the control and enjoyment of the thing given, it was had without reference to the fact that there was a widow in the case.

The auditor, therefore, charges the accountants with the amount of the bond of Frederick Beckert, and with the interest which accrued thereon from the date of the testator's death until the date of the entry of satisfaction. He does not charge interest on the money after that date, because the long delay which has been incident to this proceeding, has not been entirely the fault of the accountants. They were not to be expected to reinvest a fund which, at any moment, they might be required to pay either to the estate or to the brothers of Thomas Lonsdale. The auditor also charges the accountants with the amount of interest which they received on the bond of Christian Beckert until the 4th of August, 1855; also with the sum of $400 received August 4, 1855, applicable to the principal, and with interest on the balance which has become due and payable heretofore. He then allows the accountants an absolute credit for the balance due them on the account, as stated, and a formal credit for the balance of the principal of the bond of Christian Beckert not yet due. This sum of course, if the report be sustained, will remain to be paid over by the accountants, under the direction of the court, at some future time, when the same shall be collected. Leaving all the items of the account filed as at present, the auditor submits the following to be added thereto :—

Peter Bates & Richard Brown, Executors of Thomas
Lonsdale, deceased,　　　　　　　Dr.

| | |
|---|---:|
| To amount of bond of Frederick Beckert, dated October 1, 1847, | $684.00 |
| Interest on same, due October 1, 1852, | 41.04 |
| Interest on same till satisfied, July 11, 1853, | 31.78 |
| To interest on bond of Christian Beckert, dated October 1, 1847, from April 1, 1852, till April 1, 1855, inclusive, | 224.28 |
| Interest on same till date of payment, August 4, 1855, | 25.33 |
| To amount of principal paid August 4, 1856, | 400.00 |
| To interest due October 1, 1855, | 8.18 |
| To interest until October 1, 1856, | 50.76 |
| To balance of principal on said bond, not yet due, | 846.00 |
| | $2311.37 |

*Contra* Cr.

| | |
|---|---:|
| By balance due accountants as per account filed, | $134.49½ |
| By amount not yet due on C. Beckert's bond, | 846.00 |
| By balance due the estate, | 1330.87½ |
| | $2311.37 |

[Lonsdale's Estate.]

The auditor charges for his services the sum. of $100, including advertising and expenses of audit, to be paid by the estate; the amount, when paid, to be allowed as a credit to the accountants.

All of which is respectfully submitted.

ALFRED B. McCALMONT, Auditor.

To which report the executors filed the following exceptions:—

1. The auditor erred in charging the executors with the amount of the Frederick Beckert bond and interest thereon.

2. The auditor erred in charging the executors with the amount of the Christian Beckert bond and interest thereon.

Upon argument the court confirmed the report of the auditor, and overruled the exceptions of the executors.

From which decree the executors appealed, and assigned for error:—

That the court erred in overruling the exceptions filed by the executors to the report of the auditor.

*Wilson McCandless*, for appellants.

*H. Hepburn*, for appellee.—Bets v. Hibner, 1 *Pa. Rep.* 280; Roberts v. Halstead, 9 *Barr* 35; Hodgden v. Nayler, 5 *W. & S.* 219; Act of 11th April, 1848, *Pur.* 844; 5 *Harris* 449; Smith v. Fellows, 2 *Atk.* 62; Fairbiard v. Bowers, 2 *Ves.* 202; Hall v. Hall, 2 *Ves.* 202; Turner v. Jennings, 2 *Ves.* 612; Tomkyns v. Tadbroke, 2 *Ves.* 593.

The opinion of the court was delivered by

WOODWARD, J.—This case was very well considered and decided by the auditor. He finds that the assignment which Lonsdale made of the two Beckert mortgages was without valuable consideration—that he continued to receive the interest on the mortgages as before the assignment, and made no delivery of them in pursuance of the assignment until his long-continued intemperance, amounting sometimes to mania, had unfitted him to do business, and that the delivery then was to that one of the assignees who was his own agent, who was at that time, and previously, in the general management of his business affairs. It would seem that the motive of Lonsdale was, in part at least, the gratification of what the auditor calls a somewhat unnatural antipathy to his wife, and that he meant the assignment to take effect to her prejudice after his death. He probably had found out that he could not deprive her of her statutory portion of his personal estate by will, and hence this effort to accomplish the same object by an instrument testamentary in fact,· but not so in form.

On every ground we approve of the setting aside of assignments thus made, but especially on the ground that they were a

[Lonsdale's Estate.]

fraud on the wife's rights;—and that a wife has an interest in her husband's chattels during coverture that may be defrauded, though it is contingent, was very distinctly asserted in Evans *v.* Dravo, 12 *Harris* 66.

Referring ourselves to the reasons given at large by the auditor, the decree of the court is affirmed.

KNOX, J., dissented.