# Pringle *versus* Pringle.

1. The power of the husband over his personal property by gift *inter vivos* is absolute.

2. A man's wife and children have no legal right to any part of his goods, and no fraud can be predicated of any act of his to deprive them of the succession.

3. The personal representative of a party after his death, cannot set up his fraud to avoid an instrument or contract entered into by him, without affirmative evidence that the subject is necessary to discharge debts and then only so far as is necessary.

4. The transfer of a chose in action, whether by instrument under seal or not, unless founded on a sale for a valuable consideration, is not complete until delivery to the assignee.

5. Where there is a contract for the sale of a chattel or chose in action, actual delivery is not necessary to perfect the title of the vendee. The property passes whenever the terms of the contract are settled, and the subject-matter ascertained and set apart.

6. A gift is revocable by the donor till delivery.

7. Where the donor retains a voluntary bond or a chose in action given and assigned, he retains control over the gift and may cancel or destroy it.

8. A chancellor would not compel delivery to the donee, for he never interferes to enforce a contract not founded on a meritorious consideration.

9. The seal to a voluntary assignment will not estop the assignor until delivery, or what is equivalent to it.

10. A voluntary deed once perfected cannot be revoked at pleasure, although the grantor has retained it in his possession.

11. In an issue between the administrator and a party to whom the intestate had assigned bonds, to determine whether the assignments had been delivered in his lifetime; the husbands of daughters of the intestate are not competent witnesses.

12. Where a wife is interested the husband is excluded as a witness, entirely on the ground of public policy.

13. Every deed is presumed to have been executed, and, if produced by the grantee, delivered on the day it bears date.

14. Every instrument under seal as against the grantor and all volunteers under him imports a valuable consideration, and cannot be impeached by declarations of the grantor in the absence of the grantee.

15. If a witness be in so weak a condition as to preclude his cross-examination, his deposition should not be admitted.

16. Directing an issue to be put at the head of the trial list and to be tried on the merits without pleadings, is within the discretion of the court below, and is not reviewable on error.

October 29th 1868.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Cambria county*: No. 16, to October and November Term 1868.

In the court below judgment was entered on the 18th of April 1866, "John Pringle, now for the use of George W. Pringle, *v.* H. G. Patton and Mary Patton. Debt $72.00."

The judgment was entered on a single bill, dated March 23d 1864, with warrant of attorney to confess judgment for $72, from H. G. Patton and Mary Patton to John Pringle or order, payable

[Pringle *v.* Pringle.]

on the 23d of September 1866. Endorsed on the bill was an assignment "for value received," under seal, dated May 1st 1865, from John Pringle to George W. Pringle.

John Pringle having died, his widow and administrator, Emma Pringle, obtained a rule to show cause why the assignment should not be stricken off. On the hearing of the rule, July 10th 1867, the court directed an issue between the administrator and George W. Pringle to determine whether the bill had been "legally transferred by John Pringle in his lifetime to George W. Pringle— the issue to be put at the head of the list for next term, and tried upon the merits without pleadings."

On [the trial, before Taylor, P. J., the plaintiff in the issue gave in evidence the above-mentioned judgment, and the bill on which it was entered with the assignment. She also gave in evidence three other judgments between the same parties, on notes similar, except in the amounts and with like assignments; also, judgment entered August 3d 1864, John Pringle *v.* Henry H. Shimp and Peter Burnett, on a single bill, with warrant from defendants to plaintiff, dated July 20th 1864, for $464, payable July 20th 1866; also an assignment endorsed on the bill, dated May 1st 1865, "for value received," and reciting the entry of the judgment.

She then called Henry Shimp to prove conversations with John Pringle, not in the presence of the defendant, after the date of the assignment, and declarations of John Pringle, tending to invalidate the assignment. This was objected to by the defendant, the witness admitted to testify and a bill of exceptions sealed.

Hannah Wright and Daniel Pringle were offered by the plaintiff for the same purposes, objected to, admitted and several bills of exceptions sealed.

These witnesses and others whose testimony was admitted under objection and exception, testified as to declarations of decedent, tending to show fraud in him, and for the purpose of invalidating the assignments; also evidence bearing on the question of delivery. She offered as witnesses A. Trotter and J. B. Snyder, husbands of living daughters of John Pringle and Lucy Pringle, widow of a deceased son, all of whom were objected to as incompetent, admitted and several bills of exceptions sealed. She also offered the deposition of H. G. Patton, which was objected to, on the ground "that at the time the deposition was taken the witness was on his death-bed, and was examined by written interrogatories, answered by him at his bed, and reduced to writing in an adjoining room, or first reduced to writing in an adjoining room and then read to him on his bed, the witness at the time not being able to submit to a cross-examination."

Joseph Miller testified: "I was at Patton's when these depositions were taken. Patton said that he would rather have his

[Pringle *v.* Pringle.]

deposition taken that day; that he thought that they would need them. I was not in the room at the time. The plan to take the deposition was, that Mr. Sechler was to take it down, and as few persons to be in the room as possible. We all remained until the deposition was taken."

The evidence was admitted and a bill of exceptions sealed.

There was other evidence on both sides bearing upon the question of the delivery of the assignments. There was evidence of difficulties between John Pringle and his wife, and that the above-mentioned assignments and the transfer of other real and personal property to George,—of which evidence was given,—were to prevent the wife from receiving any of his property.

The judge, after referring to the facts and the allegation that the transfers were colorable, said:—" The only question, therefore, is, *was* there an assignment in point of fact of this single bill? and no evidence here has any relevancy to the issue further than as tends to show that there was or was not. And the relevancy of the manner of evidence heard is limited to its bearing upon the assignments endorsed upon these single bills, or as it tends to show in what manner and for what purpose they were made. If it was done with the purpose alleged, and without any consideration, and the single bills still retained by John Pringle in his possession until his death—not given to George W. Pringle in his lifetime, but found by him and appropriated by him after his father's decease—then they would only evidence a *purpose* to assign or preparation for it, if the view intended to be carried out should require it, and not an executed or operative assignment such as passed the title, or a consummated or finished transaction. If such was the case, it was not an executed assignment which passed the title, and the verdict should be for the plaintiff. If, on the other hand, the single bills assigned were delivered by John Pringle to George W. Pringle in his lifetime, or there is reason to believe they were intended to fall into George's hands, assigned after his decease, it would operate as an assignment and a transfer of the right and title as between these parties, no matter whether there was any consideration or not, or what motive prompted the act; and your verdict should be for the defendant.

" How was this? The case is thus narrowed to this single question of fact as we have now presented it. You will determine it from the evidence, and as you decide it you will decide the case."

The verdict was for the plaintiff; and the defendant took out a writ of error.

The errors assigned were:

1. The admission of the testimony of Trotter and Snyder, husbands of daughters of the decedent.

2, 3 and 4. Admitting testimony of declarations of the decedent subsequently to the date of the assignments.

5. Admitting Lucy Pringle, the wife of a deceased son as a witness.

6. Admitting the evidence of the several witnesses to show fraud by the decedent in making the assignments.

7 and 8. The part of the charge given above.

9. Admitting the deposition of Patton.

10 and 11. The form of the issue and the order as to its trial.

*G. M. Reade,* for plaintiff in error.—As to 1st assignment, cited Asay *v.* Hoover, 5 Barr 37; Carter *v.* Trueman, 7 Id. 326; Snyder *v.* Snyder, 6 Binn. 483; McComb *v.* Dillo, 5 S. & R. 304; Pipher *v.* Lodge, 16 Id. 214; Jones *v.* McKee, 3 Barr 500; Stein *v.* Bowman, 13 Peters 221; Rees *v.* Livingston, 5 Wright 119; 1 Greenl. Ev. §§ 334–337; Hitner's Appeal, 4 P. F. Smith 117. As to 2d, 3d, 4th and 6th assignments: Mackey *v.* Brownfield, 13 S. & R. 239; Maus *v.* Maus, 5 Watts 315; Riddle *v.* Dixon, 2 Barr 372; Durall *v.* Darby, 2 Wright 56; Graham *v.* Hollinger, 10 Id. 55; Reichart *v.* Castator, 5 Binn. 109; Whiting *v.* Johnson, 11 S. & R. 328; Scott *v.* Heilager, 2 Harris 238. There was no evidence of conspiracy between George and his father. Besides which the personal representative cannot show fraud in the decedent, except in aid of creditors: Swan *v.* Scott, 11 S. & R. 155; Eberman *v.* Reitzel, 1 W. & S. 181; Columbia Bank *v.* Haldeman, 7 Id. 233; Thomas *v.* Brady, 10 Barr 170; Chase *v.* Burkholder, 6 Harris 51; Buehler *v.* Gloninger, 2 Watts 226; Stewart *v.* Kearney, 6 Id. 453; Ellmaker *v.* Ellmaker, 4 Id. 91; Mitchell *v.* Kintzer, 5 Barr 216. If the defendant by fraud injured the plaintiff she has her action against him: Penrod *v.* Mitchell, 8 S. & R. 522; Mott *v.* Danforth, 6 Watts 304; Hopkins *v.* Beebe, 2 Casey 85. As to the 7th and 8th assignments: Absolute delivery was not necessary as between the parties: Shaw *v.* Levy, 17 S. & R. 101; Vandyke *v.* Christ, 7 W. & S. 373; McCandlish *v.* Newman, 10 Harris 460; Winslow *v.* Leonard, 12 Id. 17; Dennis *v.* Alexander, 3 Barr 50; Smith *v.* Smith, 5 Id. 257. As between the parties no consideration need appear: the seal imports a consideration: Johnson *v.* Smith, 1 Ves. 314; Clevinger *v.* Clevinger, 2 Vern 473; 1 Bro. P. C. 122; Ellison *v.* Ellison, 6 Ves. 662; Colman *v.* Sarrell, 1 Ves. Jr. 50; Pulvertoft *v.* Pulvertoft, 18 Id. 91, 93, 99; Fortescue *v.* Barnett, 3 Mylne & Keen 36; Killinger *v.* Reidenhauer, 6 S. & R. 531; s. c. 11 Id. 119. 9. As to the admission of Patton's deposition: Regina *v.* France, 2 M. & Rob. 207; Underhill *v.* Van Cortland, 2 Johns. Ch. 339; Amory *v.* Fellows, 5 Mass. 219; Smith *v.* Huntingdon, 1 Root 226; Allen *v.* Rand, 5 Conn. 322; Patterson *v.* Patterson, 2 Penna. R. 200; Hickok *v.* Farmers' and M. Bank, 35 Verm. 476.

[Pringle v. Pringle.]

10th assignment: Shertzer v. Herr, 7 Harris 34; Russell v. Reed, 3 Casey 166; Thompson's Appeal, 12 Id. 418; 2 Tidd's Pr. 717. 11th assignment: Ensley v. Wright, 3 Barr 501.

*R. L. Johnston* (with whom was *W. H. Lechler*), for defendant in error, cited as to 1st assignment: Reese v. Livingston, 5 Wright 119. As to 2d, 3d and 4th assignments: Reinhard v. Keenbartz, 6 Watts 96; Kauffman v. Swar, 5 Barr 230; Kinzer v. Mitchell, 8 Id. 78; Jackson v. Summerville, 1 Harris 368; McCaskey v. Graff, 11 Id. 324; Kilsey v. Murphy, 2 Casey 84; McDowell v. Rissell, 1 Wright 168.

The opinion of the court was delivered, January 5th 1869, by SHARSWOOD, J.—At common law a man, who is *sui juris* and *compos mentis*, may give away all his personal property, so as to become himself and leave his wife and children, penniless: 1 Blackst. Com. 449; 2 Kent's Com. 440. As to his lands and tenements his wife is protected to the extent of her dower against any transfer or disposition of her husband by act *inter vivos* or last will and testament, without her consent; and by the 11th section of the Act of April 11th 1848, Pamph. L. 537, commonly called the Married Women's Act, the husband cannot by will deprive his wife of the share of his personal property, to which she is entitled under the intestate laws. But as to personal property by gift *inter vivos* his power is absolute. This is perhaps to be regretted, but it is too well settled to be now shaken. The civil law, that code of written reason, did not permit it. No donation could give away the legitime or legal portion to which children or other persons were entitled as against the will of the owner, and who could attack the testament as *inofficiosum*: 1 Domat 402, Strahan's ed. Nay, if a donation were of all one's goods, there must be reserved either the usufruct of the goods given or some part which may suffice for the sustenance of the donor: Ibid. But in our law no such gift otherwise valid can be impeached as a fraud on a man's wife or children. They have no legal right to any part of his goods, and therefore no fraud can be predicated of any act of the husband or parent to deprive them of the succession. "Who so ignorant," says Gibson, C. J., "as not to know that a husband may dispose of his chattels during the coverture without his wife's consent, and freed of every *post mortem* claim by her?" Ellmaker v. Ellmaker, 4 Watts 91. A dictum by Woodward, C. J., in Evans v. Dravo, 12 Harris 65, appears adverse to this view, but the question there was whether in an action on a bond given in part for the purchase-money of real estate, the purchaser could set up that the husband had entered into an agreement not to enforce payment of the bond, which had been taken, in order to induce the wife to execute the deed; and

it was rightly ruled that he could not, as it was in fraud of the wife. The husband there sued on the bond. Had he voluntarily surrendered or cancelled it, and the action been by his executor or administrator to recover it, an entirely different question would have been presented.

There is another point which is equally indisputable. As a party cannot set up his own fraud to avoid any instrument or contract executed or entered into by him, so neither can his personal representative after his death, without some affirmative evidence that it is necessary to enable him to discharge debts of the decedent and then only to the extent to which it may be so necessary: Buehler v. Gloninger, 2 Watts 226. " There being no averment," says Rogers, J., " that the estate was insolvent, the presumption was that the administrators had assets in their hands sufficient to pay the debts." In Stewart v. Kearney, 6 Watts 455, Gibson, C. J., in an action of trover by an administrator for goods alleged to have been transferred by the intestate in fraud of creditors, said : " This action is maintainable in the name of the administrator as a trustee for the creditors only so far as the property in contest may be needed for payment of debts, whose existence the plaintiff will be bound to show:" and the judgment below was reversed, and the cause sent back with this instruction as to the law. See also Schriber v. Rapp, 5 Watts 351; Englebert v. Blanjot, 2 Whart. 245.

One other question remains to be considered before proceeding to notice in detail the assignments of error in this case. The transfer of a chose in action, whether by instrument under seal or not, unless founded on a sale for a valuable consideration, is not complete and executed until delivery to the assignee. When there is a contract for the sale of a chattel or of a chose in action, no doubt actual delivery of the thing, or of the evidence of it is not necessary to perfect the title of the vendee. The property passes whenever the terms of the contract are settled and the subject-matter ascertained and set apart: Smyth v. Craig, 3 W. & S. 14; Parker v. Donaldson, 2 Id. 9. But in a gift of a chattel actual delivery is essential. Until delivery, the gift is revocable by the donor. So where there is a voluntary bond or a gift of a security, or other chose in action, and the donor executes an assignment, whether under seal or otherwise, and retains the paper in his own possession, he retains at the same time entire control over the gift; he may cancel or destroy the transfer. No court of equity would compel the delivery of it to the donee; for a chancellor never interferes to enforce any contract not founded on a meritorious consideration: 2 Kent Com. 438–9; Clemson v. Davidson, 5 Binn. 398; Aycinena v. Peries, 6 W. & S. 251; Nesmith v. Drum, 8 W. & S. 9; Yard v. Patton, 1 Harris 288. But it is urged that the seal in law imports consideration and the

transfer on its face purports to be for a valuable consideration, by which the assignor and volunteers under him will be estopped from denying it.   This may be true, but the seal produces no such effect until the instrument becomes the deed of the party by delivery or what in law is equivalent thereto.   Until then the assignment, though signed and sealed, is still an unexecuted transfer in the eye of the law.   The cases cited and relied on by the learned counsel for the plaintiff do not support his position. In Smith v. Smith, 5 Barr 256, there was an express direction by the obligor in a paper which was admitted to probate as testamentary that his executors should deliver the bond in question after his death.   In Parker v. Urie's Executors, 9 Harris 305, the case is put on the ground that there was a valuable consideration for the assignment.   "Where," says Lewis, C. J., "one on his death-bed expresses a wish to his heir-at-law that certain persons whom he names shall receive of his estate specified articles and sums of money as gifts from him, and the heir promises him that his request shall be fulfilled, the necessary implication is that the promise is to be performed after the death of the promisee, and that the consideration is that the promissor shall succeed to his estate under the intestate laws."   In Bunn v. Winthrop, 1 Johns. Ch. Rep. 329, the deed is stated to have been delivered, though it was retained in the possession of the grantor. There was nothing in that circumstance necessarily inconsistent with delivery.   After the most formal delivery, a deed may be returned to the possession of the grantor for safe keeping or any other lawful purpose.   So in Boughton v. Boughton, 1 Atkins 625, the fact that the deed had been fully executed by delivery is assumed : all that was decided was that such a deed kept by the grantor in his possession, and never cancelled, will not be set aside by a subsequent will.   In Johnson v. Smith, 1 Ves. 314, the question whether there was sufficient evidence of a delivery was argued by the counsel and noticed by Lord Thurlow.   The grantee had the key and custody of the assignment, though the grantor still had access to it, and dealt with the securities assigned as his own.   The decree was that the grantee should elect between that assignment and a voluntary bond subsequently executed and delivered, because the courts always lean against double portions. I have examined carefully the other cases cited, but find no one of them to sustain the position contended for—that an assignment of a chose in action by deed under seal, but without a valuable consideration, is binding on the assignor, or those who claim under him, without that which in fact or in law actually or constructively amounts to a delivery.   Colman v. Sarrell, 1 Ves. Jr. 50, is a clear authority for the doctrine that a court of equity will not enforce an unexecuted voluntary agreement.   "To do so," said Lord Thurlow, "would be to make him who does not sufficiently

convey, and his executors after his death, trustees for the person
to whom he has so 'defectively conveyed; and there is no case
where a court of equity has ever done that.    Whenever you
come into equity to raise an interest by way of trust, you
must have a valuable or at least a meritorious consideration.
Nothing else will do." That a voluntary deed once perfected
cannot be revoked at pleasure, even though the grantor has re-
tained it in his own custody, was decided in Worrall *v*. Jacob, 3
Merivale 256; but no question was made in that case as to deli-
very.   The deed in question was a writing under seal in execution
of a power of appointment contained in a marriage settlement.
In view of these principles and authorities, it follows that the
learned judge in the court below was right in his instructions to
the jury which are complained of in the 7th and 8th assignments
of error.   He left it to them to determine upon the evidence
whether there was only " a purpose to assign, or preparation for
it, and not an executed or operative assignment such as passed
the title or a consummated or finished transaction;" in other
words, "was there an assignment in point of fact."    In this
there was nothing of which the plaintiff in error has any right to
complain.

The first error assigned is that the court admitted in evidence
the testimony of the husbands of living daughters of John Pringle,
the intestate, whose administratrix was prosecuting this proceed-
ing for the benefit of his estate.   That the daughters themselves
were interested and incompetent witnesses was not disputed; and
indeed one of them, Catharine Snyder, was excluded expressly
on that ground.   But nothing is better settled than that wherever
the wife is interested, the husband cannot be a witness; not on
the score of his interest, for he may preclude himself from any
by a release, or may have done so by a settlement to her separate
use, but entirely on the ground of public policy.   It is necessary
to preserve family peace and maintain that full confidence which
ought to subsist between husband and wife: Snyder *v*. Snyder, 6
Binn. 483; McComb *v*. Dillo, 5 S. & R. 304.   "The husband
cannot be a witness for his wife in a question touching her sepa-
rate estate:" Lord Mansfield in Wyndham *v*. Chetwynd, 1 Burr.
424; Davis *v*. Dinwoody, 4 T. R. 678.   There was no pretence
here that the proceeding was carried on for the benefit of creditors
—no evidence that the money or any part of it was needed for
the payment of debts.   There was therefore no possible contin-
gency or uncertainty in the interest of the wives.   They had a
clear, certain and direct interest in the success of the plaintiff in
recovering a verdict on this feigned issue, and thus settling that
the judgment in question belonged to the estate of their father.
We are of opinion that there was error in the admission of these
witnesses.

[Pringle v. Pringle.]

The 2d, 3d and 4th assignments of error may be considered together. They complain of the admission of evidence of the declarations of John Pringle the assignor made subsequently to the date of the alleged assignment. It must be observed that in presumption of law, every deed is taken to have been executed on the day of its date; and if produced by the grantee is presumed also to have been then duly delivered. Every instrument under seal also as against the grantor, and all volunteers claiming under him, imports a valuable consideration. We have seen, too, that a voluntary deed of gift, provided it has been fully executed and perfected by delivery, cannot be revoked by the donor. It is plain upon principle, then, as well as upon the authority of many decided cases, that the declarations of a grantor or donor, made in the absence of the grantee or donee, and subsequent to the grant or gift, are inadmissible to impeach the title derived under it. It is unnecessary to cite these cases at large. Among them are some very nearly resembling this case in their circumstances: as Reichart v. Castator, 5 Binn. 109; Wolf v. Caruthers, 3 S. & R. 240; Whiting v. Johnson, 11 Id. 328, and Scott v. Heilager, 2 Harris 238. These are all cases of instruments alleged to be fraudulent as to creditors. We have seen that a gift of personalty by a husband is no fraud on his wife, nor was there here any evidence or pretence of fraud upon creditors; there could therefore have been no conspiracy between John and George Pringle to defraud anybody, nor was there any evidence of it. The declarations of the one could not therefore be received on the principle which admits the declarations of co-conspirators against each other. We think there was error in allowing this evidence to be given.

The 5th error assigned is in admitting Lucy Pringle as a witness. She was the widow of a deceased son of John Pringle. It did not appear whether her husband had died before or after his father. If it was before, it is clear that she would have no interest in the estate. Every witness is presumed to be competent until the contrary is made to appear, either on the voir dire or by evidence aliunde. This assignment of error, therefore, is not sustained.

In regard to the 6th assignment, it has already been disposed of. So far as the testimony of the witnesses related to declarations by John Pringle in the absence of George, whether to prove fraud or the non-execution of the assignment, it was inadmissible. As to any facts which such of them as were competent might be able to testify tending to show that the assignment had never been executed and perfected by delivery, it would be material and admissible.

The 7th and 8th assignments of error have already been considered.

The 9th assignment is for admitting the deposition of H. G.

9 P. F. SMITH—19

[Pringle *v.* Pringle.]

Patton.   The grounds of objection are stated in the bill of exceptions, but although the learned judge may have intended to state the facts as proved or admitted, he has not done so.   The evidence as we have it on the paper-book does not support these objections in point of fact.   The testimony of Joseph Miller is altogether insufficient for the purpose.   It may be inferred indeed from what he says that the deposition was taken in the manner it was by consent or at least without objection.   If the fact was that the witness was in such a weak and dying condition as to preclude the defendant from cross-examination, and such cross-examination was not waived, the deposition ought not to have been admitted.   But as this does not appear we cannot say there was error in admitting the deposition.

The 10th assignment of error is to the form of the issue awarded by the court.   It was doubtless framed that the questions of law involved might so arise on the trial of the issue, that either party might thus obtain the opinion of the court of the last resort.   Had it been confined to the narrow question of fact of the execution or delivery of the assignment, the parties would not have enjoyed that privilege.   Whether the note on which the judgment was entered had been legally transferred presented indeed a mixed question of law and fact: but so would have been an issue as to whether it had been executed and delivered, for what amounts to an execution and delivery, when the facts are proved, is a question of law.

Nor have we any right to revise the action of the court below in ordering the issue to be put at the head of the trial list and be tried upon its merits without pleadings, which forms the subject of the 10th assignment of error.   That was entirely within the sound discretion of the court and is not rightfully the subject of review here.

Judgment reversed and venire facias de novo awarded.