## Charles Saake, Appellant, *v.* Elizabeth Dorner.

*Husband and wife—Trust—Evidence—Equity—Responsive answer.*

A wife's possession of money does not raise the presumption that she stole it from her husband. Where the bill alleges that she took it from him without his consent or knowledge, and that averment is specifically denied in the answer, the averment in the bill must be supported by competent evidence.

To a bill in equity against the sister of plaintiff's deceased wife for an account of moneys which plaintiff alleged that his wife had taken from him, and given to defendant, defendant filed an answer responsive to all the allegations in the bill. Plaintiff testified that his wife had no money when he married her, that she had not acquired any by will or descent afterwards, that he had given her money for the house and whatever she needed, but that he gave her no spending money. Defendant testified that she had received the money from her sister, who had received various sums of money, at different times, from her mother, out of which she might have saved up the sum so given. *Held,* that the evidence was insufficient to sustain the bill.

Argued January 23, 1895. Appeal, No. 153, July T., 1894, by plaintiff, from decree of C. P. No. 2, Phila. Co., June T., 1890, No. 729, dismissing bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for discovery and an account.

The bill averred in effect that the plaintiff on March 4, 1873, married Henrietta Dorner, that they lived together until her death on January 10, 1890, and had four minor children; that during their marriage the wife of the plaintiff took divers sums of money belonging to the plaintiff, and without his knowledge and consent, and gave them at different times to her sister, the

defendant, Elizabeth Dorner. The bill prayed for discovery and an account.

The answer denied that plaintiff's wife took money belonging to him during their marriage, and gave it to defendant, without the consent of plaintiff.

Plaintiff testified as follows:

" My wife's maiden name was Henrietta Dorner. She is a sister of Elizabeth, the defendant. I was married to Henrietta Dorner, March 4, 1873. My wife is now dead. She died the 10th of January, 1890. My business is that of a costumer, at No. 466 North Eighth street. My wife was never made a feme sole trader; nor in any way legally authorized to do business for herself. She never had any money left to her or any other estate. At the time I married her she had no money or estate, or none since. I gave her money for the house and whatever she needed, and that's all.

" She worked in my store for me at my business. She helped me to manufacture the costumes I sold. She was always making business. I gave her no spending money."

" Q. What did you mean a minute ago, then, by saying that you gave her money for whatever she needed? A. When she goes to market, when she wants things for herself or for the children; when she bought things for the store. I allowed her money for that purpose; oh, yes. She took in and paid out money at the store."

Defendant admitted that Mrs. Saake had given her $375. She further testified:

" My sister said this is my own money, not any of it belongs to him (meaning her husband); it's money I have saved up myself. Then she went on to tell me why she gave me this money. She said, 'I want you to use it for the children, particularly for Amelia. I think you will have to use it, for she will never bear from her father what I have had to bear from him. I have stated everything about the money, where she got it from.

" At the time of her marriage my sister had no separate estate or property of her own that I know of; after her marriage she received no property by will or descent; she received some sums of money from my mother, not very much, some six or eight years ago; I was present several times when my

mother gave her money; sometimes the amount would be as high as $50.00; she seemed then not to have much money; one time I know she got $25.00; I think it would aggregate more than $100; I can't say it was over $200; she, my mother, is a woman of means."

The master, James L. Miles, Esq., reported in favor of plaintiff. Exceptions to his report were sustained by the court in an opinion by PENNYPACKER, J., 3 Dist. Rep. 170, and a decree entered dismissing the bill.

*Error assigned*, among others, was (2) in not finding that the $375 in possession of defendant belonged to plaintiff.

*Henry J. Scott*, for appellant.—Where the findings of a master have been set aside, the Supreme Court, having equal advantages in arriving at the truth, will examine the testimony and determine whether it sustains the master: Mirkil v. Morgan, 134 Pa. 144; Perry's App., 8 Atl. Rep. 450.

The onus is upon the defendant to show conclusively that the money was the wife's and not plaintiff's: McDermott's App., 106 Pa. 358; Gracie's Est., 158 Pa. 521.

*Wm. Henry Lex*, for appellee.—Whatever case the plaintiff made out, he made out practically from his own testimony, and he was clearly disqualified by the act of assembly from testifying: Act of May 23, 1887, P. L. 158; Sahms v. Brown, 4 Pa. C. C. R. 488.

The basis of the plaintiff's claim being that the moneys belonged to him, the foundation of his whole case is gone when it was shown that Mrs. Saake probably received the money from an entirely different source, whether remote as to time or uncertain as to amount.

A married woman can now dispose of her own separate estate as if she were a feme sole: Adams v. Gray, 32 W. N. C. 192.

OPINION BY MR. JUSTICE McCOLLUM, April 8, 1895:

This is a case in which a husband tried to annul a trust created by his wife for the benefit of their children, and to appropriate the subject of it. To accomplish his purpose, he entered a court

of equity and craved its assistance. He made his wife's sister defendant in his bill, and as he proceeded upon his suspicion rather than upon his knowledge of the existence of facts entitling him to what he sought, he inserted in it a prayer for discovery. An answer was filed and a master was appointed who, upon a hearing had, reported that the defendant received from the plaintiff's wife three hundred and seventy-five dollars in trust for his children, and that the money so received belonged to him. The master allowed the plaintiff to testify in his own behalf, although it was objected that his wife being dead he was not a competent witness. There was not a word in his testimony tending to support the allegation in the bill that his wife took his money without his consent and gave it to her sister, or which indicated that anybody had taken his money without his permission. The substance of his testimony was that he was married in 1873, and his wife died in 1890; that she had no money when he married her, and he was not aware that she acquired any by will or descent during coverture. In regard to money, he let her have from time to time, he said : "I gave her money for the house and whatever she needed, and that is all. I gave her no spending money." He did not claim or suggest that this money was more than sufficient for the purposes for which it was given, or that any portion of it entered into the trust fund. He called the defendant for cross-examination under the statute and she testified to receiving the money as stated by the master, and that when she received it, her sister told her it was money she had "saved up," and that none of it belonged to her husband. She also testified that her mother who was "a woman of means," gave her sister money from time to time, and sometimes in her presence. In regard to money given in her presence she said : "I was present several times when my mother gave her money; sometimes the amount would be as high as $50.00; one time I know she got $25.00 ; I think it would aggregate more than $100. I can't say it was over $200." The plaintiff and the defendant were the only witnesses in the case, and we have referred to all of their testimony which affects the ownership of the trust fund. In this testimony there is no fair basis for an inference that the fund was saved from money which the plaintiff let his wife have, or that she at any time appropriated any of his money surreptitiously:

His own evidence excludes such an inference. True, he alleged in his bill that his wife took his money without his consent or knowledge, but the answer to this allegation was responsive, and specifically denied it. There is no presumption arising from the marital relation which, in the presence of this answer and the testimony in the case, is sufficient to establish the plaintiff's claim to the trust fund. All the evidence harmonizes with and supports the declaration of his wife when she created the trust, and rejects the imputation of dishonesty on which his bill was based. It shows that his wife received from her mother from time to time gifts of money from which she might have accumulated the fund in dispute, and as there is nothing in the evidence which suggests that it could have been raised from her husband's money, we think the learned court below was justified in rejecting the learned master's conclusion as to the ownership of it, and in dismissing the plaintiff's bill. The only inference fairly deducible from the testimony is that Mrs. Saake was the owner of the money with which she created the trust, and being the owner of it she had a clear right under the act of June 3, 1887, to dispose of it as she did. There is no presumption arising from a wife's possession of money that she stole it from her husband, and if he alleges that she took it from him without his consent or knowledge, he must support his accusation by evidence. It is not sufficient to aver in his bill that she did so, when that averment is specifically denied by the answer.

Decree affirmed and appeal dismissed at the cost of the appellant.