# Windolph, Appellant, v. Girard Trust Company.

*Gifts—Gifts inter vivos—Deed of Trust—Wife's power over her personal property—Rights of husband—Fraud—Gifts testamentary in character—Equity.*

1. Under the present legislation in Pennsylvania, a wife has the same power of disposal of her personal estate during coverture that her husband has of his personal property and she can create a valid trust of her separate personal estate by deed of trust during her life without the joinder or consent of her husband.

2. If a gift by a husband or wife during the donor's life is absolute and accompanied by a transfer of possession with intent to divest the donor of ownership, although the obvious effect is to defeat the husband's or wife's succession to the property at the donor's death, the gift is not fraudulent and therefore invalid.

3. The good faith required of a donor or settlor in making a valid disposition of such donor's property during life does not refer to the purpose to affect the wife or husband but to the intent to divest the donor of the ownership of the property.

4. A married woman made a deed of trust naming as trustee her mother with a provision for the substitution of a trust company in case of the mother's death unless the settlor should appoint another successor. The deed conveyed a part of the settlor's separate personal estate to the trustee in trust to collect the income and pay it to the settlor for life, and after her death to pay an annuity to her husband so long as he remained unmarried, an annuity to a niece, the balance of the income to the trustee herself, and after her death the balance of the income equally to two brothers of the settlor, on their death to their issue and a part to charity, and if no minor issue of the brothers should survive them, then the entire estate to charity. The deed gave the trustee power to change investments, but not to invest in other than legal securities except during the life of the settlor, without her consent in writing, and relieved the trustee of liability from loss of investments thus made. The settlor reserved the right at any time during her life in her discretion to rescind, revoke or annul the instrument and the trust in whole or in part and to change or amend its terms and provisions, which action should be evidenced by an instrument in writing. After the settlor's death her husband filed a bill in equity averring that the deed was made not in good faith but to defraud the husband of his marital rights, that it was testamentary in character and did not constitute a

valid gift and that therefore the personal property formed part of the estate of the wife and should be turned over to her personal representative and that the trustee of the brothers and niece of the wife had joined in a scheme to defraud the husband of his marital rights. There was no evidence produced to sustain the alleged collusion and fraudulent scheme and the testimony went to prove that immediately after the execution and delivery of the deed the settlor parted with legal title and the physical possession of the entire corpus of the trust fund and thereafter exercised no dominion or control whatever over the trust estate other than as specifically provided in the deed itself. There was further proof that the settlor had taken legal advice in connection with the making of the deed. The referee found that there was no evidence that would justify a finding that the deed was gotten up as a subterfuge to permit the settlor in her life time to possess and control the estate and at the same time to be free of the post mortem claims of her husband and that the settlor fully intended to and actually did assign and deliver to the trustee the property in question for the purposes set forth in the deed and that under the advice of counsel she endeavored to effectuate her intentions by fully complying with the requirements of law, and in conclusion held that the deed of trust was valid and that the trustee held title for the purposes of the trust and not subject to any claim of the plaintiff as the surviving husband of the settlor. The findings of the referee were approved by the court below. Upon appeal, *held* no error.

5. In such case it was held that the question as to whether or not the plaintiff husband acquired his knowledge of the declaration of the trust before or after the death of the wife was immaterial, and it was further held that such a gift was not governed by the rule forbidding a secret voluntary conveyance of her property by a woman in contemplation of marriage without the consent of her intended husband.

6. That the settlor reserved to herself the entire income from the trust property during her life, that the estates of the remaining cestui que trust were not to take effect in possession or enjoyment until after her death, and that there was a power of revocation reserved in the instrument were not sufficient to avoid the deed as a valid declaration of trust and to show that it was intended as a disposition of property to take effect after death.


Argued March 27, 1914. Appeal, No. 59, Jan. T., 1914, by plaintiff, from decree of C. P. No. 1, Philadelphia Co., March T., 1912, No. 6651, upon bill in

equity in case of William H. Windolph v. Girard Trust Company, Succeeding Trustee under instrument of Annie Windolph, Charles J. Hepburn, Executor of the Will of Annie Windolph, Deceased; George W. Shafer, Administrator of the Estate of Elizabeth Gravell, Deceased; Regna L. Farmer, George W. Shafer and Zachary Taylor Shafer. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Bill in equity by surviving husband to have declared void as to him a voluntary deed of trust of personal property made by his wife.

The referee, M. Hampton Todd, Esq., made inter alia the following findings of fact:

The plaintiff, William H. Windolph, and Annie Windolph, the settlor in the deed of trust of July 16, 1909, were married on March 21, 1903, and resided together continuously as husband and wife, until her death on September 28, 1911.

Annie Windolph was survived by her husband and her two brothers, George W. Shafer and Zachary Taylor Shafer.

Elizabeth Gravell, the trustee named in the deed of July 16, 1909, and the mother of Annie Windolph, died September 3, 1911, and letters of administration on her estate were duly granted to her son, George W. Shafer, who is one of the respondents.

On the 16th day of July, 1909, Annie Windolph duly signed, acknowledged and delivered a deed assigning and conveying her interest in the estate of George Crock, deceased, together with certain cash and securities therein specified and enumerated of the value of one hundred and three thousand, five hundred and fifty dollars (103,550) to her mother Elizabeth Gravell, in trust, for the purposes therein set forth. Subsequently under the provisions of the trust Annie Windolph added securities to the value of five thousand dollars to the corpus of the trust fund.

Elizabeth Gravell, the trustee named in said deed of trust, by instrument of writing duly executed by her on July 16, 1909, duly accepted the trust therein and thereby created and agreed to comply with the terms and provisions thereof. At this time Elizabeth Gravell was in her seventy-eighth year and Annie Windolph in the fifty-first year of her age.

On September 19, 1911, the said Annie Windolph, by instrument in writing under her hand and seal, refused to exercise the right reserved to her in the original deed of trust to appoint a successor to Elizabeth Gravell, deceased, as trustee, and consented and agreed that the trust should devolve upon and vest in the Girard Trust Company in accordance with the terms of said deed of trust.

On September 19, 1911, the said Annie Windolph, by instrument in writing under her hand and seal by virtue of the power reserved to her in the original deed of trust, amended the same by increasing the annuity therein given to her husband William H. Windolph from five hundred dollars to nine hundred dollars.

On September 20, 1911, the Girard Trust Company accepted the said trust as provided in the original deed and the amendment thereof and agreed to abide by the terms thereof. The assets of the trust estate were delivered to the Girard Trust Company as succeeding trustee by George W. Shafer, administrator of Elizabeth Gravell, the deceased trustee, in November, 1911.

On October 3, 1911, the will of Annie Windolph, dated September 19, 1911, was duly admitted to probate by the register of wills for the County of Philadelphia and letters testamentary thereon granted to the respondent, Charles J. Hepburn.

By instrument in writing dated and acknowledged the 31st of May, 1912, William H. Windolph duly made and caused to be recorded his election to take against his wife's will and claiming his right to take as her surviving husband under the laws of this State.

In December, 1904, Annie Windolph consulted J. Frank E. Hause, Esq., of the Chester County Bar, in reference to the preparation of a will. Mr. Hause at this time explained to Mrs. Windolph that her husband could take against any will she could make and Mrs. Windolph then expressed the opinion that her husband would be satisfied with whatever disposition she would make of her property.

Early in the year 1908 Charles J. Hepburn, Esq., a member of the Philadelphia Bar, drew a will for Annie Windolph by which a large part of her estate was given to charities. Mr. Hepburn informed Mrs. Windolph that her will could operate only on one-half of her estate unless her husband acquiesced therein. Mrs. Windolph asked Mr. Hepburn's advice whether she could not dispose of her property as she desired. She was advised that she could by deed of trust but to do so she would have to part with the possession and control of her property. This she did not want to do. The subject was discussed several times between Mr. Hepburn and Mrs. Windolph but she was unwilling to part with the possession of her property and consequently no deed of trust was then prepared. In the fall of 1908, Mrs. Windolph being about to go to a hospital to be operated on for appendicitis, sent for Mr. Hepburn and asked him to draw a deed of trust for her along the lines he had theretofore advised. She said she was going under an operation and might die. She was told that a deed of trust drawn under such conditions would not affect her purpose, that she should make a will and take the chance of her husband approving or disapproving it. She replied that she then had a will under which her property would pass to her mother, who knew what she wanted to do with it. She insisted that the deed should be prepared at that time. The deed was prepared and signed at the hospital and also the accompanying schedule. Mrs. Windolph recovered from the operation for appendicitis and returned to her home. This transaction was

never fully and finally consummated. Certain moneys in bank accounts to the credit of Annie Windolph were transferred to Elizabeth Gravell, the trustee named in the deed of trust, and the mortgages mentioned in the schedule were assigned and the assignments placed in the hands of Mr. C. J. Hepburn, but they were never recorded nor did Mr. Hepburn ever receive permission to deliver the same. The terms of this deed were not satisfactory to Annie Windolph. In March, 1909, in the presence of Elizabeth Gravell and Annie Windolph and at their instance and request this deed was cancelled by Mr. Hepburn by drawing a line in ink through the signatures. Annie Windolph at this time decided she would make a new deed of trust. In April, 1909, Annie Windolph gave Mr. Hepburn instructions to prepare a new deed of trust, which he did, and the same was duly executed on July 16, 1909, and the securities and other property delivered to Elizabeth Gravell as is hereinbefore set forth. The cash and securities enumerated in the schedule attached to the deed of trust were delivered to the trustee in the following manner:

The cash on deposit in the Girard Trust Company $17,058.16; in the Western Savings Fund $6,005.16; in the Beneficial Savings Fund $17,744.43, and in the Northern Trust Company $16,867.95 stood in the name of Elizabeth Gravell as trustee having been transferred to her credit under the cancelled deed of trust of 1908 were treated as moneys of Annie Windolph turned over by her to Elizabeth Gravell, trustee. No change was made in the deposits as the accounts were in the proper name under the new deed of trust. The deposit account in the Philadelphia Savings Fund Society $6,162.62 was duly transferred on August 2, 1909, and opened in the name of Elizabeth Gravell in trust for Annie Windolph. Cash to the amount of $11.68 was paid to Elizabeth Gravell, trustee. Three mortgages, namely, $3,500 on 2202 West Lehigh avenue; $2,000 on 2034 West Atlantic street, and $2,500 on 5230 Fitzwater street, were car-

ried as cash in the schedule. The mortgages on 2034 West Atlantic street and 5230 Fitzwater street, aggregating $4,500, had been called and upon the receipt of the money from the same it was paid to Elizabeth Gravell, trustee. The mortgage for $3,500 on 2202 West Lehigh avenue had been accepted by Mrs. Windolph prior to the preparation of the schedule and the money for the loan was furnished by Mrs. Windolph and the mortgage taken in the name of Elizabeth Gravell, trustee. The remaining mortgages described in the schedule and aggregating $31,300 were duly assigned to Elizabeth Gravell, trustee, and the assignments recorded. The eight shares of stock in the National Bank of Chester Valley at Coatesville, valued at $400, were duly transferred to Elizabeth Gravell as trustee. The interest and estate of Annie Windolph in the estate of her grandfather, George Crock, mentioned in the schedule, were transferred to Elizabeth Gravell, trustee, by the assignment and conveyance thereof in the deed of trust.

After the delivery of the trust assets to Mrs. Gravell, she invested trust funds in six mortgages, three through Mr. Hepburn, two through Mr. Bishop, of the Girard Trust Company, and one through Mr. McCollum. These mortgages were all submitted to Annie Windolph for her approval before they were accepted by the trustee as investments.

For more than ten years prior to the creation of the trust in question, in the making of mortgage investments, not only Mrs. Gravell but also the brothers of Mrs. Windolph were in the habit of submitting the same to her for her judgment thereon before accepting or rejecting them. There was nothing unusual in Mrs. Gravell as trustee submitting to Mrs. Windolph before accepting them, the mortgages taken by the trustee for the investment of trust funds and it was good judgment on her part so to do.

Mrs. Windolph did not assume to dictate to the trustee what mortgages she should accept for the trust. The

final determination was made by the trustee, but always after consultation with Mrs. Windolph.

The collection and distribution of the income arising from the trust estate was made by Elizabeth Gravell as trustee, with the exception of three interest payments on the James G. Downward mortgage of one thousand dollars, which were paid directly to Annie Windolph and not turned over by her to the trustee. This arose by reason of Mr. H. B. McCollum, who acted as agent for the trustee in this matter, not notifying the mortgagor of the assignment of the mortgage to the trustee and the mortgagor continued to mail the checks for interest to Mrs. Windolph as he had done before the assignment. Mrs. Windolph called this to the attention of both Mr. Hepburn and Mr. McCollum, and thereafter Mr. Downward was notified to send all future payments of interest to Mr. McCollum for the account of the trustee, thereafter the interest was paid to the trustee. The remaining income of the trust estate was collected by Mr. Hepburn. Mr. McCollum and Fox & Sons for account of the trustee, and the checks by which the interest on investments was paid would generally, although not in every instance, be endorsed by the trustee and delivered to Annie Windolph. No account was rendered by the trustee in her lifetime nor was the income paid to Annie Windolph quarterly as provided in the trust deed, nor was any compensation paid the trustee for her services. The income was usually paid to Mrs. Windolph as it was from time to time received although there was a balance of income in the possession of the trustee at the time of her death which was subsequently accounted for by her estate. At the time of the creation of the trust Mrs. Gravell was consulted about accepting the trust and was reluctant to assume the duties incident thereto. She did accept the trust, however, upon the agreement that she should be relieved from the burden of collecting the income by Mr. Hepburn and Mr. McCollum, and this ar-

rangement was carried out in the manner hereinbefore set forth.

In connection with the acceptance for the trust of the Da Costa, Shields and Eveland mortgages, bonuses to the amount of $940 were paid by the borrowers to Annie Windolph. These mortgages were either second mortgages or were upon an undivided interest in the mortgaged premises; for this reason they were not legal investments and consequently under the terms of the trust required the approval of Annie Windolph before they could be accepted. These bonuses were not paid to the trustee under advice of counsel, because if they had been they could be set off against the mortgage debts as usurious interest. These sums were paid to Annie Windolph as a commission for her approval of the investments.

In reference to the administration of the trust estate by Elizabeth Gravell, the referee finds that there was no undue or dominating influence exercised by Annie Windolph or anyone else upon the trustee. Mrs. Gravell was an old lady and only consented to serve as trustee upon the condition that she should be as far as possible relieved from attending to the business details of administering the trust. She consulted with Mrs. Windolph in reference to investments and she also consulted her counsel, Mr. Hepburn, and her agent, Mr. McCollum, on the same subject. There was no evidence before the referee that would justify a finding that the deed of trust in this case was gotten up as a mere subterfuge to permit Annie Windolph in her lifetime to possess and control her estate and at the same time to be free of the post mortem claims of her husband. She fully intended to and actually did assign and deliver to the trustee the property in question for the purposes set forth in the deed and under the advice of counsel she endeavored to effectuate her intention by fully complying with the requirements of law.

The referee recommended that the bill be dismissed

and upon exceptions filed to the report the court, PAT-
TERSON, J., confirmed the report of the referee and dis-
missed the bill.  Plaintiff appealed.

*Errors assigned* were the decree of the court and in
dismissing exceptions.

*John G. Johnson,* with him *James P. Fogarty* and
*Daniel C. Donoghue,* for appellant.—The deed of trust
was void as to the plaintiff because it was a fraud on his
marital rights: Robinson v. Buck, 71 Pa. 386; Evans v.
Dravo, 24 Pa. 62; Hendrickson v. Evans, 25 Pa. 441;
Lonsdale's Est., 29 Pa. 407; Eshleman's Est., 143 Pa.
24; Hummel's Est., 161 Pa. 215; Young's Est., 202 Pa.
431.

A voluntary disposition in trust of real and personal
property by a woman about to marry is a fraud on her
intended husband if the disposition was kept secret from
him: Duncan's App., 43 Pa. 67; Robinson v. Buck, 71
Pa. 386; Baird v. Stearne, 15 Philadelphia 339; Potter
v. Fidelity Ins. Co. (No. 2), 199 Pa. 366; Walker v.
Dunshee, 38 Pa. 430; Hummel's Est., 161 Pa. 215;
Campbell's App., 80 Pa. 298.

Where a deed of trust is made for the grantor's own
personal convenience, and no beneficial interest is vested
in any one until after the death of the grantor, the dis-
position of property to take effect after the grantor's
death is testamentary: Chestnut St. Nat. Bank v. Fi-
delity Ins., Etc., Co., 186 Pa 333; Frederick's App., 52
Pa. 338; Rick's App., 105 Pa. 528; Line's Est., 155
Pa. 378.

The evidence established that the deed operated as a
mere nominal transfer of the personal property em-
braced in the deed and did not constitute a perfected gift
inter vivos valid and binding upon the plaintiff: With-
ers v. Weaver, 10 Pa. 391; Lonsdale's Est., 29 Pa. 407.

*C. J. Hepburn,* with him *J. Frank E. Hause,* for ap-

pellees.—A married woman has power to create a valid trust of her separate personal estate without the joinder or consent of her husband: Adams v. Grey, 32 W. N. C. 192; Saake v. Dorner, 3 Pa. D. R. 170; Saake v. Dorner, 167 Pa. 301.

The deed of July 16, 1909, was not a fraud of plaintiff's marital rights: Killinger v. Reidenhauer, 6 S. & R. 531; Lines v. Lines, 142 Pa. 149; Schwartz's Est., 17 Philadelphia 435; Ellmaker v. Ellmaker, 4 Watts 89; Pringle v. Pringle, 59 Pa. 281; Dickerson's App., 115 Pa. 198; Bouslough v. Bouslough, 68 Pa. 495.

The instrument of July 16, 1909, was not testamentary in its nature: Wilson v. Anderson, 186 Pa. 531; Rynd v. Baker, 193 Pa. 486; Potter v. Fidelity Ins. &c. Co. (No. 1), 199 Pa. 360; Kraft v. Neuffer, 202 Pa. 558; Nolan v. Nolan, 218 Pa. 135; Reese v. Ruth, 13 S. & R. 434; Greenfield's Est., 14 Pa. 489; Eckman v. Eckman, 68 Pa. 460; Fellow's App., 93 Pa. 470; Mattocks v. Brown, 103 Pa. 16; Knowlson v. Fleming, 165 Pa. 10.

The reserved right of revocation was not inconsistent with the creation of a valid trust; if not exercised according to the terms in which it was reserved, it is as though it had never been: Dickerson's App., 115 Pa. 198; Lines v. Lines, 142 Pa. 149; Reiff's Est., 16 Pa. Superior Ct. 80; Smith's Est., 144 Pa. 428; Nolan v. Nolan, 218 Pa. 135.

OPINION BY MR. JUSTICE MESTREZAT, May 18, 1914:

This is a bill in equity filed by a surviving husband to have declared null and void as to him a voluntary deed of trust of personal property made by his wife, and for a decree that the property embraced in the deed continued to be her property and at her death formed part of the assets of her estate. The defendants in the bill are a substituted trustee under the deed, the administrator of the original trustee, and the persons named as beneficiaries in the deed. The case was heard on bill, answers, replication and proof by a referee who recommended the

dismissal of the bill. Exceptions were filed by the plain-
tiff to the referee's report which were overruled by the
court, and a final decree entered dismissing the bill.
The plaintiff has taken this appeal.

The deed of trust is dated July 16, 1909, and names as
trustee the mother of the settlor, with a provision for the
substitution of the Girard Trust Company, in case of
her death, unless the settlor should appoint another suc-
cessor. It conveys a part of the settlor's separate per-
sonal estate to the trustee in trust to collect the income
and pay it to the settlor for life, and after her death to
pay an annuity to her husband so long as he remains un-
married, an annuity to a niece, the balance of the income
to the trustee herself, and after her death the balance of
the income equally to two brothers of the settlor, on their
death to their issue and a part to charity, and if no minor
issue of the brothers shall survive them, then the entire
estate to charity.

The deed gives the trustee power to change invest-
ments, but not to invest in other than legal securities ex-
cept during the life of the settlor without her consent
in writing, and relieves the trustee of liability from loss
on investments thus made. The trustee's compensation
is fixed at three per cent. The settlor reserved the right
at any time during her life, in her discretion, to rescind,
revoke or annul the instrument and the trust in whole or
in part, and to change or amend its terms and provisions,
which action should be evidenced by an instrument in
writing.

The bill avers that the deed was executed and deliv-
ered, not in good faith, but with the intent, purpose and
object of defrauding the husband, in case he should sur-
vive his wife, of his marital rights in the personal prop-
erty conveyed, that it was testamentary in character and
did not constitute a valid gift; that, therefore, the per-
sonal property included in the deed formed part of the
estate of the wife at the time of her death and should be
turned over to her personal representative; that after

the execution and delivery of the deed the wife acted as the sole and absolute owner of the property and exercised complete dominion over it; and the trustee, who was the wife's mother, and the brothers and niece of the wife all participated with the wife in a scheme whereby the husband would be defrauded of his marital rights, and the deed was executed by the wife without his knowledge, consent or approval, his first knowledge thereof being obtained after her death.

The two brothers and the niece deny, in their answers and their testimony, the averments as to the alleged collusion in a fraudulent scheme. No evidence of it was produced at the trial and hence it is eliminated from the case. All the defendants deny the averment that after delivery of the deed the settlor exercised absolute dominion over the property, and aver on the contrary that immediately upon the execution and delivery of the deed she parted with the legal title and the physical possession of the entire corpus of the trust fund and thereafter exercised no dominion or control whatever over the trust estate other than as specifically provided in the deed itself.

From the report of the learned referee it appears that the plaintiff and Annie Windolph, the settlor in the trust deed, were married in 1903, and resided together continuously and amicably until her death on September 28, 1911. Elizabeth Gravell, the mother of the wife, and the trustee named in the deed, was seventy-eight years old at the date of the deed and died September 3, 1911. She is described by one of the witnesses as "a very shrewd, able and capable business woman." She duly accepted the trust. The referee found that the securities and other personal property enumerated in the schedule were part of the separate estate of Annie Windolph, and at the time of the execution of the deed and as part and parcel of the transaction were absolutely and in good faith transferred and delivered by her to the trustee for the uses and purposes declared in the trust deed; that

the deed and the transfer and delivery of the securities under it to the trustee were not made by the settlor in contemplation of death nor was it intended by her to take effect after her death, and that it was intended by her to take effect and become absolute on the instant of delivery. He further found: "There was no evidence before the referee that would justify a finding that the deed of trust in this case was gotten up as a mere subterfuge to permit Annie Windolph in her lifetime to possess and control her estate and at the same time to be free of the post mortem claims of her husband. She fully intended to and actually did assign and deliver to the trustee the property in question for the purposes set forth in the deed and under the advice of counsel she endeavored to effectuate her intention by fully complying with the requirements of law." In conclusion the referee held that the deed of trust is valid and that the trustee holds title to the securities and other property embraced within the trust for the purpose of the trust and not subject to any claim of the plaintiff as the surviving husband of Annie Windolph. The findings of the referee were approved by the learned court below.

The plaintiff, who is the appellant, contends: (a) that the deed of trust is void as to him because it was in fraud of his marital rights; (b) that it is testamentary; and (c) that the evidence established that the instrument operated as a mere nominal transfer of the personal property embraced therein and did not constitute a perfected gift inter vivos valid and binding upon him.

We have examined with care the testimony in the case and are not convinced that the learned referee is in error as to his findings of facts. The principal testimony as to the purpose of the settlor in declaring the trust is that of the two attorneys whom she consulted in regard to the matter. They both testify at length as to what occurred at the several interviews between them and their client and, if believed, there can be no reasonable doubt that the deed was executed by her, not in contemplation of

death nor intended to take effect after her death, but to take effect immediately on its execution and for the uses and purposes named in it. The deed was delivered and transfer of the possession of the entire trust estate was made to the trustee. She, or her agents, made the investments and collected the income with the exception of three interest payments on a mortgage made by check to Mrs. Windolph. The referee distinctly finds that there was no undue or dominating influence exercised by Mrs. Windolph or anyone else over the trustee who consulted her counsel and agents as well as her daughter in relation to the investments.

We do not agree with the appellant that the deed was a fraud upon his marital rights. It is the settled law in this State, as was the common law, that during his life a man may dispose of his personal estate by voluntary gift or otherwise as he pleases, and it is not a fraud upon the rights of his widow or children: Ellmaker v. Ellmaker, 4 Watts 89; Pringle v. Pringle, 59 Pa. 281; Dickerson's App., 115 Pa. 198. This power arises from the fact that he is the absolute owner and hence may make a gift, declare a trust, or otherwise dispose of his personal property at his pleasure. During his life his wife and children have no vested interest in his personal estate, and hence they cannot complain of any disposition he sees fit to make of it. Their right to his property attaches only at his death. "It is scarcely necessary to add," says STERRETT, J., in Dickerson's Appeal, supra, "that such gifts, made in good faith as these were, cannot be impeached on the ground that they are a fraud upon the rights of the widow. Nothing is better settled than the power of a husband to dispose of his personal property in good faith, by gift or otherwise, during coverture, free from all post mortem claims thereon by his widow." The indispensable foundation for any limitation on his control is a fraudulent intent to defeat his wife's statutory rights as widow: Young's Est., 202 Pa. 431. If the gift is absolute and accompanied by a transfer of pos-

session with intent to divest the donor of his ownership, although the obvious effect is to defeat the wife's or children's succession to the property at the donor's death, it is not fraudulent and therefore invalid. "In our law," says SHARSWOOD, J., in Pringle v. Pringle, supra, "no such gift otherwise valid can be impeached as a fraud on a man's wife or children. They have no legal right to any part of his goods, and therefore no fraud can be predicated of any act of the husband or parent to deprive them of the succession" In Lines v. Lines, 142 Pa. 149, we held that the "good faith" required of the donor or settlor in making a valid disposition of his property during life does not refer to the purpose to affect his wife but to the intent to divest himself of the ownership of the property. It is, therefore, apparent, that the fraudulent intent which will defeat a gift inter vivos cannot be predicated of the husband's intent to deprive the wife of her distributive share in his estate as widow.

We think there can be no doubt that, under the present legislation in this State, a wife has the same power of disposal of her personal estate during coverture that her husband has of his personal property, and that she can create a valid trust of her separate personal estate without the joinder or consent of her husband. Of course, at common law this could not be done as her estate, on the marriage, went to her husband. Our legislation, however, has changed her status as to her separate property and she now has the same right and power as an unmarried person to acquire, own, control, sell or otherwise dispose of her property, and may exercise the right and power in the same manner and to the same extent as an unmarried person. The only exceptions are that she may not become an accommodation endorser, maker, guarantor or surety for another, or mortgage or convey her real estate without the joinder of her husband. With these exceptions, a married woman occupies the same relation to her property as an unmarried person or, as her husband to his property. In

other words, saving the disabilities specified in the statute, her control over, and power of disposal of, her separate estate are the same as if she were a feme sole. She may, therefore, dispose of her personal estate during coverture as she pleases. Her husband has no vested interest in her personal property during her lifetime. If done in good faith and with the intention to divest herself of the ownership, she may sell her personal property, give it away, or make any other disposition of it she desires during her life and he cannot complain, for the all-sufficient reason that he has no interest in the property. She is the owner and has absolute control over it, and hence in disposing of it during life she infringes no property or other right of her husband. He does not sustain the relation of creditor to his wife. If she does not die vested of it, he can never acquire any interest in the property. It is manifest, therefore, that having no right or interest in or to the property as husband, there are no marital rights of which he can be defrauded by his wife's disposal of the property during life by gift or otherwise. To hold that a wife cannot declare a trust or make a valid gift inter vivos of her personal property would in effect, be repealing the statute which frees her from the common law restrictions and limitations imposed upon her and declares her ownership to be that of a feme sole. In Saake v. Dorner, 167 Pa. 301, we held that the Married Person's Property Act of June 3, 1887, P. L. 332, was ample to enable a married woman to create a trust of her separate estate. That act was repealed by the Act of June 8, 1893, P. L. 344, the present law on the subject, which extends and enlarges a married woman's control over her separate estate and confers upon her the same right and power as an unmarried person to acquire, control and dispose of her property and to make any contract in the exercise or enjoyment of such right and power, requiring however the joinder of the husband in mortgaging or conveying her real estate and prohibiting

her from becoming an accommodation endorser, maker, guarantor or surety for another.

The wife's motive for declaring the trust in the present case was not to defraud her husband, nor did she resort to the deed for the purpose of defeating his marital rights. She did desire to make a legal disposition of the part of her separate personal estate embraced in the deed, and hence she consulted her counsel with that purpose in view. She was advised that she could dispose of it by a proper declaration of trust, and the deed in question was made in pursuance of that advice. It was duly executed and delivered by her to the trustee, and the property embraced in it was transferred to and taken possession of by the trustee. This, as found by the learned referee, was done in good faith and for the purposes set forth in the conveyance.

We do not regard as material whether the plaintiff acquired his knowledge of the declaration of the trust before or after the death of his wife. She was the owner of the property, had the absolute control and power of disposal over it, and hence she was not required to consult or notify her husband of her intention to dispose of it. If she had the power of disposal by deed of trust, notice to her husband of her intention to exercise it would have served no purpose so far as he was concerned. It was equally unimportant that he should have notice if she could not dispose of the property without his consent. In either case his rights were not affected by his ignorance of the trust during her lifetime.

The present case is not a secret voluntary conveyance of her property by a party in contemplation of marriage without the consent of her intended husband, and hence the numerous authorities cited by counsel holding that such disposition of her property is void have no application here. That was declared to be a fraud upon the marital rights of the other party and, of course, avoided the transfer of the property as to him. The reason of the rule forbidding such antenuptial transfers is well

stated by LOWRIE, C. J., in Duncan's Appeal, 43 Pa. 67, 69, where it is said: "Common candour forbids that so important a change in his intended wife's circumstances, and in her power over her estate, should be made without his consent, and equity sternly condemns it as a fraud upon his just expectations. This principle of equity has stood the test of experience too long to be open to dispute now.......The plaintiff had a right to suppose that he was marrying her with all her legal power over her estate, whereas by this arrangement it was secretly slipped into the hands of trustees, and out of her control, just before the marriage was consummated. This is not just or equitable treatment of the husband. A fraud no greater than this would avoid any other contract than that of marriage; but as this cannot be avoided, equity avoids the contracts that are in fraud of it." The distinction between a voluntary disposition of property in contemplation of marriage, and a gift or declaration of trust of personal estate by a husband or wife during coverture is recognized in the decisions. In the recent case of Hall v. Hall, 109 Va. 117, where it is held that a voluntary deed by a man of his personal estate cannot be set aside by his wife as a fraud upon her rights, the distinction is adverted to, Mr. Justice WHITTLE saying: "The fact that the precise question involved in this case has been twice decided by this court, renders unnecessary a discussion of the power of the husband to disappoint his widow by divesting himself of title to his personal estate in his lifetime. Of course, the doctrine is not to be confounded with the principles applicable to the dispositions of property made in contemplation of marriage."

The plaintiff further contends that the instrument of July 16, 1909, is not a deed of trust, but is testamentary in its nature. If this be true, it would not, of course, deprive the husband of his interest in the property embraced in the deed, as the wife would die possessed of the property and hence his statutory interest therein

would be unquestionable. It is contended that the instrument bears upon its face evidence that it was not intended to take effect in the lifetime of Annie Windolph. These evidences of its testamentary character, it is claimed, are that the settlor reserved to herself the entire income from the trust property during her life, that the estates of the remaining cestui que trustent were not to take effect in possession or enjoyment until after her death, and that there was a power of revocation reserved in the instrument. We think, however, these reasons are not sufficient to avoid the deed as a valid declaration of trust and to show that it was intended as a disposition of property to take effect after death. The referee found, on sufficient evidence, that the deed was delivered to the trustee at the time of its execution together with a transfer of the possession of the property, that the settlor parted with her title to the property at that time and vested it in the trustee for the purposes specified in the deed, and that she at no time intended that the deed of trust should be construed as a will or that it was executed as a subterfuge to enable her to obtain the control of her property and at the same time make it effective to defeat her husband's marital rights in her estate. The intention of the settlor at the delivery of the deed was to part with the legal title and the reservation to herself of a life interest and the enjoyment of the estate until her death did not invalidate the trust as to the beneficiaries named in the deed: Lines v. Lines, 142 Pa. 149; Nolan v. Nolan, 218 Pa. 135; Wilson v. Anderson, 186 Pa. 531; Robertson v. Robertson, 147 Ala. 311. In the Wilson Case we said, inter alia, (p. 539) : "The general rule is that if the intention of the grantor at the time he delivered the deed was to part with the legal title, the trust will be enforced in favor of the beneficiaries, even though their enjoyment of the estate is postponed until the death of their benefactor." It is equally well settled that a reserved right of revocation is not inconsistent with the creation of a valid trust: Dickerson's App., 115

Pa. 198; Smith's Est., 144 Pa. 428; Stone v. Hackett, 78 Mass. 227. In the latter case it is said: "A power of revocation is perfectly consistent with the creation of a valid trust........If this right is never exercised according to the terms in which it is reserved, as in the case at bar, until after the death of the donor, it can have no effect on the validity of the trusts or the right of the trustee to hold the property." Nor do we think the evidence, as claimed by plaintiff, discloses that the instrument was executed with testamentary intent. The settlor was distinctly told by her counsel prior to the execution of the deed that in order to make it effective as a deed of trust, she would have to give up her property and lose all control over it. She clearly understood that to make the deed effective she must deliver it and the property to the trustee. There is nothing subsequent to the execution and delivery of the deed that indicates that this was not done. The evidence which it is claimed shows that the settlor continued to exercise her right as owner over the property was carefully examined by the learned referee and he found that it did not sustain the plaintiff's contention. Our examination of the evidence has not convinced us that he was wrong. We think that the essential requisites of a valid trust are disclosed in this case, and that the instrument of July 16, 1909, was not a will.

What has been said disposes of the plaintiff's contention that the evidence established that the deed operated as a mere nominal transfer of the property and did not constitute a valid and perfected gift inter vivos. In determining this question the learned referee considered not only the deed but all the other evidence bearing upon the subject and his conclusion was adverse to the plaintiff's contention. The findings of the referee were approved by the court below which said: "We have carefully gone over the testimony and have noted the exceptions of plaintiff to the same. There appears to be no substantial error in the referee's findings of fact." These

findings are conclusive upon us in the absence of manifest error of which we are not convinced.

The decree is affirmed.