## Ellmaker *against* Ellmaker.

Technical words in a written contract must have a technical interpretation : hence, a relinquishment of all right of dower to, in or out of an estate which the releasor had in law or in equity, or in any way might or could possibly have, will not exclude a widow from a share of the personal estate under the statute of distributions.

WRIT of error to the district court of *Lancaster* county.

This was an action for money had and received by Margaret Ellmaker against William Hiester, administrator of Isaac Ellmaker deceased ; in which the plaintiff claimed to recover 7746 dollars with interest, being the one third of the personal estate of her husband, the defendant's intestate. The defence was, that the plaintiff and Isaac Ellmaker, previously to their marriage, entered into a contract, by which she, if she survived her intended husband, should receive a certain sum in lieu of her interest in his estate : and the cause turned upon the interpretation of that contract, which was in these words :

"Articles of a marriage contract made, concluded and agreed upon by and between Isaac Ellmaker of the one part, and Margaret Smith of the other part, both of Earl township, Lancaster county, and state of Pennsylvania, witnesseth : that the said parties have agreed to enter into the bonds of matrimony upon the following conditions : that is to say, that after marriage, if she, the said Margaret, shall survive the said Isaac, then, and in that case, the heirs, executors or administrators of the said Isaac, as the case may be, shall pay to the said Margaret the sum of 1000 dollars in one year after the decease of the said Isaac ; and the sum of 300 dollars yearly thereafter, during her natural life, and no longer : and, in consideration of the above sum or sums so agreed to be paid to her the said Margaret, she, the said Margaret, does hereby relinquish and quit claim to all right of dower to, in or out of the estate of the said Isaac, which she, in law or in equity or in any way, might or could possibly have. In witness whereof, we, the said parties, have hereunto set our hands and seals, this 30th day of May, A. D. 1823.

"ISAAC ELLMAKER, [L. S.].
"MARGARET SMITH, [L. S.].

"Witnesses present—Catherine Ellmaker, Anthony E. Roberts."

The court below was of opinion, and so instructed the jury, that the legal interpretation of this marriage contract was a bar to the plaintiff's recovery ; and they found accordingly. This was the error assigned.

IV.—M

[Ellmaker v. Ellmaker.]

*Montgomery* and *Jenkins,* for plaintiff in error, cited, *Co. Litt.* 31, *a*; *Jacobs's Law Dic., tit. Dower* ; *Prac. in Ch.* 244 ; Galbraith *v.* Green and Wife, 13 *Serg. & Rawle* 94 ; Killingen *v.* Reidenhauer, 6 *Serg. & Rawle* 531 ; 1 *Penns. Bl.* 387 ; 3 *Smith's Laws* 145, 148 ; 2 *Rop. on Prop.* 1 ; Jackson *v.* Stevens, 16 *Johns.* 110 ; Whallon *v.* Kauffman, 19 *Johns.* 104; 1 *Penns. Bl.* 31 ; 1 *P. Wms* 530; 2 *Penns. Bl.* 152, 155 ; *Whart. Dig.* 393, *pl.* 66 ; 2 *Atk.* 592.

*Champneys* and *Ellmaker,* for defendants in error, cited, 3 *Code Nap.* 316, *ed. of* 1824 ; *Paley's Philosophy* 95 ; 1 *Pow. on Con.* 224, 370 ; *Co. Litt.* 183, *b* ; *Ibid* 112, *b* ; 1 *Fond. Eq.* 434, *note b* ; 1 *Mad. Ch.* 29 ; Hollingsworth *v.* Fry, 4 *Dall.* 347 ; Lessee of Hauer *v.* Sheetz, 2 *Binn.* 537; *Pothier* 47; 1 *Penns. Bl.* 387 ; Pringle *v.* Gaw, 5 *Serg. & Rawle* 536 ; *Bayley's Dic., tit. Dower* ; 4 *Griff. Reg.* 619 ; Killingen *v.* Reidenhauer, 6 *Serg. &. Rawle* 534.

The opinion of the Court was delivered by

GIBSON, C. J.—Ambiguity is the effect of words that have either no definite sense, or else a double one ; and if it be found in the settlement before us, it is because the word dower has a restricted sense in legal proceedings, and an extended one in familiar use.   It is said by Mr Chitty, that the plain, ordinary and popular meaning shall prevail, in preference to the strict, grammatical and etymological meaning ; but, that the language of a contract may have acquired, by the usage of trade or the like, a peculiar sense distinct from the popular one, and that then such peculiar sense shall prevail.   *Law of Cont.* 20.   Now, if commercial terms be taken in their commercial sense, though used by one who was not a merchant; why shall not legal terms be taken in a legal sense, when used by one who was not a lawyer ?   Nothing is said by Mr Chitty, and but little by any one else, expressly in regard to the application of terms of art; but is there an instance in which the technical words of a written contract have received any but a technical interpretation ?   " Words used as terms of art," says Comyn, " ought to be observed."   *Parols, A.* 2.   The difference in this respect between a deed and a will is a familiar one.   The technical words of a devise sometimes yield to the apparent intent, in consideration of the frequent inability of dying men to command professional assistance ; but the. technical words even of a testator are to have their legal effect when they have been used without qualification ; and it is only when they appear from the context to have been used in a different sense, that the apparent intent is suffered to prevail.   Such is put for the result of the cases in Mr Coxe's note, 2 *P. Wms* 478.   But the parties to a written contract, having acted by the advice of counsel, or standing chargeable with supineness if they have not, are entitled to no indulgence on the score of ignorance ; and cannot have the legal meaning of their words perverted to let in what they may allege to have been their actual intent.   This principle alone would decide the question.   But

[Ellmaker v̇. Ellmaker.]

even treating the settlement as a will, and extracting its meaning exclusively from the context, we should find that there is nothing in it to deprive the word dower of its peculiar meaning as a word of art, or to indicate an intent which is inconsistent with its legal effect. The relinquishment is of dower in the estate generally, which, in the broadest sense, undoubtedly includes both real and personal; but the word being technically inapplicable to any thing but land, required no express restriction of its effect to a subject exclusively implied by the use of the term. Nothing is more distinctly expressed by any word in the law than is the initiate freehold of the wife by the word dower. The subjoined words, in law or in equity, seem to be expletives, thrown in, as is usual even with experienced scriveners, without a definite object. Were it necessary to assign something as a subject for their action, in order to leave nothing inoperative, it might be found in the land; for the wife is dowable, by our law, of an equitable as well as of a legal estate. They certainly do not point to chattels. Were we even to admit the existence of an intrinsic ambiguity, we could not imagine a reason to enlarge the signification of the word beyond its legal effect. I lay out of the case the conceded fact, that the husband who penned the settlement was a layman. Having thought fit to act in the business of his own head, on him be the consequences of his blunders. They are entitled to less indulgence than would be conceded to a blunder even of counsel, inasmuch as a party who has taken professional advice is chargeable with neither negligence nor presumption. Now it will not be said that the words of a deed prepared by counsel do not operate invariably according to their legal effect. But what reason is there to think the legal effect of the instrument is not in accordance with the actual intent? There was no need of an antenuptial relinquishment to preclude an indefeasible interest in the husband's chattels; and it is therefore not to be presumed to have had that object. He may doubtless have thought a general provision necessary to guard against it; but why not a special one? Beside, the argument would come round again to an assumption of ignorance on his part, and a claim of indulgence for it which would be incompatible with certainty of title. But the assumption is not founded in fact. Who so ignorant as not to know that a husband may dispose of his chattels during the coverture without his wife's consent, and freed of every post mortem claim by her; or that he can dispose of his land freed of her dower but with her concurrence? The current transactions of life publish the former; and a knowledge of the latter is proved by experience to be universal. The effect of the marriage settlement, therefore, is not to exclude the wife from a share of the personal estate under the statute of distribution.

Judgment reversed, and a *venire de novo* awarded.