## Beirne v. Continental-Equitable Title & Trust Co., Appellant.

Argued April 27, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Daniel C. Donoghue,* for appellant.—The trusts were not dry nor passive trusts: Hemphill's Est., 180 Pa. 95; Still v. Spear, 45 Pa. 168; Ash's App., 80 Pa. 497; Smith's Est., 16 Dist. 241; Moorshead's App., 180 Pa.

119; Eshbach's Est., 197 Pa. 153; Mooney's Est., 205 Pa. 418; Simonin's Est., 260 Pa. 395.

The decision of the learned chancellor is contrary to the adjudicated causes: Dickerson's App., 115 Pa. 198; Lines v. Lines, 142 Pa. 149; Windolph v. Trust Co., 245 Pa. 349; Dolan's Est., 279 Pa. 582.

It was early held in this State that a husband could dispose of his chattels during coverture without his wife's consent, and freed of every postmortem claim by her: Ellmaker v. Ellmaker, 4 Watts 89; Pringle v. Pringle, 59 Pa. 281; Dickerson's App., 115 Pa. 198; Young's Est., 202 Pa. 431; Benkart v. Trust Co., 269 Pa. 257; Armstrong v. Connelly, 299 Pa. 51.

*John P. Connelly,* for appellee.—It is the contention of the appellee that this was a dry trust.

The learned chancellor found as a fact and as a conclusion of law that the creation of the trusts by the settlor was fraudulent and done for the purpose of depriving his wife of her portion of his estate under the laws of the State of Pennsylvania.

OPINION BY MR. JUSTICE SIMPSON, May 26, 1932:

On February 4, 1929, Thomas L. Beirne, named therein as the settlor, executed and delivered to defendant a deed of trust covering a life insurance policy and certain shares of corporate stock, the trustee being "expressly authorized and empowered to retain and hold as investments of the trust estate any or all of the securities and property hereby or which may hereafter be assigned to it to be held under the terms hereof, or the trustee may sell or dispose of the same with full power as to all securities and property at any time included in the trust estate [and] to make all necessary assignments and transfers thereof," with the authority and duty "to manage, invest and reinvest the same and collect the income and profits thereof and after paying all proper costs and expenses [including its commission as trustee]

to pay over the net income arising therefrom unto the said settlor for and during all the term of his natural life," and, after his death, to pay, out of the principal, specified sums to named individuals and charities; to "invest and reinvest" the remainder, to pay out, of its income, $75 a month to a designated individual for life, the balance thereof to a named charity, and, after the individual's death, to pay all the income to the charity, together with so much of the principal as it may from time to time demand. The stocks and policy were delivered to defendant at the time of the execution of the deed of trust, and, by virtue of powers of attorney also then duly executed by the settlor, they were forthwith transferred to the defendant as trustee.

The settlor also reserved the right to revoke the trust, "by an instrument in writing signed by him and delivered to the trustee during his lifetime, or by such instrument the settlor may alter this trust and the estates, uses or beneficiaries herein declared." Some ten months later, he exercised this reserved power, and made a somewhat different distribution of the income and principal of the trust after his death; but the trust, in all other respects, was expressly confirmed, and the changes thus made in no way affect the questions to be decided by us.

The bill in equity in this case, which was filed by the widow of the settlor, after reciting the provisions of the deed of trust and the supplement thereto as above set forth, and attaching copies thereof to the bill, stated that the settlor subsequently died, leaving a will and certain codicils, none of which is of any moment here, except, perhaps, paragraph four of the will which states: "Inasmuch as my wife deserted me and has thereby forfeited all rights to share in my estate, I am not making any provision in my will for her beyond that which I felt was a moral duty in my lifetime and having paid her $40 per month in life, I am directing my executors to set aside a sum sufficient to continue paying to her $40 a month for and during the full term of her natural life,"

with a proviso revoking the legacy if she should contest the will or elect to take against it. The bill further averred that the trusts attempted to be established were passive or dry trusts, testamentary in character, and hence the assets named therein continued to be the property of the settlor; that plaintiff did not desert him but that he deserted her; that, in April, 1930, he ceased paying the $40 a month named in his will; and that the deeds of trust were created by him "for the manifest purpose of depriving plaintiff of her rights under the law......as his wife, and that the said trust was not created in good faith and was not a valid distribution of property, but was done under the guise of charity in order to prevent the plaintiff from establishing her rights as his wife under the law of the State of Pennsylvania."

The bill prayed that the original deed of trust and the supplement thereto be decreed to be null and void as against plaintiff; that defendant account for all moneys, whether of principal or interest, received by it under the deeds; that it be restrained from selling any of the assets so received by it, and from making any distribution of the principal or income of the trust; and for such other and further relief as plaintiff may be entitled to.

The answer denied that the deeds of trust were testamentary in character, or that the trusts were dry or passive, and averred, on the contrary, that active trusts were created thereby. It alleged that the settlor's intention in creating the trusts was immaterial, since he had the right to do as he pleased with his property, and plaintiff had no interest in it at that time; that the deeds were executed in good faith and for a valuable consideration; that possession of the assets named was forthwith delivered to defendant, which has continued in "the sole and exclusive control, management and distribution" thereof since the creation of the trust; and that it was immaterial, so far as concernced the trust estate, whether the settlor deserted plaintiff or she him,

but averred, on information and belief, that she deserted him on or about August, 1923, five and a half years before the execution of the deed of trust.

At the trial it could not be shown which deserted the other, he being dead and she, for that reason, being incompetent to testify in regard thereto, though the fact that they lived separate and apart, and he regularly paid her $40 per month, would seem to imply that the separation, however it arose, was at least continued by agreement. The evidence showed that the will was executed the day after the deed of trust, that in talking it over with the scrivener, before execution, the settlor asked the scrivener, who was a lawyer, whether he could eliminate plaintiff from any interest in the trust assets, and the scrivener told him he could, "that a settlor could give away his property, could make any disposition he liked of his personal property and that he was not defrauding his wife of any rights. And I followed the Windolph Case [Windolph v. Girard Trust Co., 245 Pa. 349] in giving that advice, and the execution—the preparation and execution of the instrument followed." On the faith of this advice the settlor executed the deed of trust, with the "declared purpose to eliminate his wife" from any interest in the assets conveyed thereby, leaving to her only the $40 a month given by the will, which, as stated, was also being prepared at that time. There was no other evidence in any way antagonizing the validity of the trust, but the testimony showed also that, from the day the deed was executed, defendant had exclusive control of the assets specified in it.

The trial judge held that the deed of trust and its supplement created only dry or passive trusts, were testamentary in character, and did not vest in the trustee title to the assets attempted to be conveyed; that they and also the will "were fraudulent in their origin" and "were all created by [the settlor] for the purpose of depriving plaintiff, as his wife, of her portion of his estate

under the laws of Pennsylvania," and hence were null and void.

Defendant's exceptions to the adjudication were dismissed by the court in banc, and a final decree entered, declaring that the deed of trust and its supplement were null and void as against plaintiff, that defendant account for any and all sums of money received by it under the deeds of trust, and that it be perpetually restrained from selling or disposing of any of the trust property. From that decree this appeal is taken.

It is clear beyond reasonable question that the deeds are not testamentary in character and that the trusts created thereby are active, and not dry or passive. Under them, the trustee has active duties to perform and does not merely hold the legal title to the assets named; hence the trust is an active and not a passive one: Stambaugh's Est., 135 Pa. 585; Whiteley's Est., 273 Pa. 364. The fact that the settlor could have revoked the trusts at any time is a matter of no moment, since he did not in fact revoke them: Lines v. Lines, 142 Pa. 149; Windolph v. Girard Trust Co., 245 Pa. 349, 368; Dolan's Est., 279 Pa. 582, 590; Barber's Est., 304 Pa. 235, 241. The statement of the trial judge that "In order that a trust may be active, the trustee must be charged not only with ministerial acts but also with discretion," does not help appellee, even if correct, since, as we have shown by the foregoing extract from the deed, the trustee had a discretionary power to continue the assets in their then present form, if it saw fit so to do, or to sell them and reinvest the proceeds in other securities. The citation of Hemphill's Est., 180 Pa. 95, as sustaining the trial judge's conclusion on this point, is an unfortunate one, since there it was held that "a trust to pay the 'net income' of realty to the cestui que trust involves the exercise of discretion by the trustee" and makes the trust an active one; a conclusion applied to personalty also in Simonin's Est., 260 Pa. 395, 397. And, as said in Deniston v. Deniston, 263 Pa. 224, and Austin-Nichols & Co.

v. Union Trust Co., 289 Pa. 341, 347-8, a trust is an active one though the discretion to be exercised is but slight.

The other point involved is far more interesting and important. There are many early decisions which hold that, so far as concerns his personal estate, a husband may do what he pleases with it, and the wife cannot be heard to complain. See Killinger v. Reindenhauer, 6 S. & R. 531; Pringle v. Pringle, 59 Pa. 281; Bouslough v. Bouslough, 68 Pa. 495; Dickerson's App., 115 Pa. 198, 204; Ross's App., 127 Pa. 4. The reason for this conclusion is well stated in the first of the cases cited, 6 S. & R. 535-6: "A man can never be said to commit a fraud on the contingent rights of others, where it depends on his own act whether they shall ever exist. The rights of [the wife], other than to her common law dower, he could defeat in the same manner as he could the succession of his heirs." So, also, it was said in Lines v. Lines, 142 Pa. 149, 165: "It is the settled law of this State that a man may do what he pleases with his personal estate during his life. He may even beggar himself and his family, if he chooses to commit such an act of folly. When he dies, and then only, do the rights of his wife attach to his personal estate." Those decisions are all based on the general rule that if one has the legal right to do a particular thing, the law will not inquire into his motive for doing it: Jenkins v. Fowler, 24 Pa. 308; Vitagraph Co. of America v. Swaab, 248 Pa. 478, 493; Roush v. Herbick, 269 Pa. 145; McDermott v. Reiter, 279 Pa. 545; Titusville Amusement Co. v. Titusville Iron Works Co., 286 Pa. 561.

In the cases first above cited, and the others in their train, the question of the husband's or wife's intent to commit an actual fraud on the other spouse was not considered, perhaps was not attempted to be shown. In the later authorities, now to be reviewed, however, it is treated as the vital factor, and if actual fraud upon the other spouse is shown to have been the real cause of the

transfer of the assets, the general rule is applied, as in other cases of actual fraud, and the conveyance is held void. Thus in Hummel's Est., 161 Pa. 215, 217, it is said the husband "may give away or squander his property and thus reduce himself and wife to poverty, according to the authorities; but no case has gone so far as to sustain a voluntary obligation given and received with intent to defraud the wife's rights." See also Young's Est., 202 Pa. 431; Waterhouse v. Waterhouse, 206 Pa. 433; Dillen v. Dillen, 221 Pa. 435, 437-8; Armstrong v. Connelly, 299 Pa. 51. "But the fraudulent intent is the indispensable foundation for any such limitation of his control" (Young's Est., 202 Pa. 431, 441; Windolph v. Girard Trust Co., 245 Pa. 349, 363), and this is not shown merely by proving that "the husband's intent [was] to deprive the wife of her distributive share in his estate as widow" (Windolph v. Girard Trust Co., supra, page 364; Potter Title and Trust Co. v. Braum, 294 Pa. 482, 485) ; nor, as we have already shown, does the fact that he retained a life estate in the income of the assets conveyed, or that he reserved a right to revoke the trust whenever he chose to do so, in any way affect the matter.

It is clear that the bill in equity in this case was based on the one in Windolph v. Girard Trust Co., supra. The facts there and here and the averments in the two bills are exactly the same, and every point made here was unsuccessfully made there, though then argued on the line now contended for by appellee (of course with consummate ability) by the late John G. Johnson, Esq. The only difference between that case and this, is that there the master and this court refused to find an intent to commit a fraud from the fact that the grantor, after consulting her lawyer as to the method of doing it, made the conveyance for the purpose of preventing her husband from having any interest in the assets conveyed, while here the chancellor found the intent to commit a fraud from that fact alone. This settlor also took legal advice

and was told that he "could make any disposition he liked of his personal property, and that he was not defrauding his wife of any rights." He then executed the deed of trust now being attacked, which we are now told by the chancellor and the court below was a fraud on her rights. Of course that finding must be set aside, since, as stated by the present Chief Justice for the court, in Potter Title & Trust Co. v. Braum, 294 Pa. 482, 487: "this, standing alone, is not such bad faith as to constitute the fraudulent intent necessary to defeat the gift."

The decree of the court below is reversed and plaintiff's bill in equity is dismissed at her cost.

DISSENTING OPINION BY MR. JUSTICE KEPHART, June 16, 1932:

I disagree with the decision of the majority by which it is held that by the simple expedient of a deed of trust a husband may accomplish that which he cannot do by his will, and may deprive his wife of any right or claim to his personal property after his death. During the early years of married life, she may have helped him to acquire this very property. Indeed, it is the joint efforts of husband and wife which are usually responsible for the prosperous condition of the husband. The ultimate goal of the two is to accumulate sufficient property, real and personal, not only that their children may, in a measure, be properly cared for; but, more especially, that in old age each may be provided for, notwithstanding the death of the other. The common practice has invariably been to place property thus acquired in the name of the husband. Indeed, placing it otherwise is looked upon, at times, with suspicion.

Recognizing the great justice of the wife's claim, the law long ago took steps to safeguard it. Blackstone speaks of it, "The reason which our law gives for adopting it, is a very plain and sensible one; for the sustenance of the wife, and the nurture and education of the younger children." Kent, in his Commentaries, states,

"This humane provision of the common law was intended for the sure and competent sustenance of the widow, and the better nurture and education of her children." Our legislature too has recognized this "moral" claim; its latest expression, the Act of 1917, placing the husband and wife on a parity, and providing that either spouse is entitled absolutely to the same share in the estate of the other as if that spouse had died intestate. The earlier acts likewise gave to either the right to claim against the other's will if an effort was made to deprive one spouse of these rights. Indeed, so high is the regard for these marital rights that it may be safely stated that they occupy an important place in the contract of marriage. The acquisition of them has been regarded as such a substantive part of the marriage contract, that certain dispositions of personal or real property by either party before the fact of marriage in an effort made to cut out these "marital rights" have been declared to be a constructive fraud on the marital rights of the injured party. While deeds and other instruments disposing of property in anticipation of marriage are declared void as against the other party to the marriage contract, it is now possible, under the decision in the instant case, to entirely set aside such rights without fear after the fact of marriage.

The decision of the majority in this case, in my opinion, goes far beyond anything that has been decided in our former opinions; under the rule now laid down, a husband may easily defeat the claim of his wife after his death even to the extent of making her a pauper, and she has no redress no matter how just or meritorious her claim. It is no answer to say that a fair minded husband would not do this; it should not be possible for any husband to do it.

I cannot go along with the court to this extent. I believe that to permit such an invasion of the wife's marital rights by making it possible for her husband to deprive her of them at his pleasure is against the best in-

terests of society, and that such decision may be fruitful of consequences that will become exceedingly harmful. It is my opinion that an adherence to our former decisions, as I view them, will produce far better results, prevent grievous injustice, and work for the general betterment of the marital state. It must be understood that what has been done to deprive the wife of this right, has not been done by an act of the legislature, but by the decision of this court in sustaining the husband's act. I frankly concede that there must be a certain liberality with respect to the alienation of personal property; it cannot be burdened with postmortem or contingent claims that would cause titles to be in turmoil whenever property is thus transferred. In transferring such interests they should be freed from such claims. But that is far different from upholding the deliberate attempt that is here made by the husband to deprive his wife of her postmortem rights and still retain for himself all the benefits of the property until his death.

What the husband did in this case was to transfer to a third party, as trustee, personal property. He was to receive the entire income and all the benefits from this trust for his life. He had the right to control and manage it in the hands of the trustee. He could change the beneficiaries even to the day of his death. He had the right to revoke the trust and retake physical possession of the property at any time. In other words, his hand never left the property nor its benefits until his death severed the connection. He placed the property in the name of this third party as trustee solely to prevent his wife from having any share whatever in it after his death. It would seem to me that the mere statement of such facts ought to be sufficient in themselves to require a court of law to defeat the husband's purpose.

The majority opinion states that "A man can never be said to commit a fraud on the contingent rights of others, where it depends on his own act whether they shall ever exist. The rights of [the wife], other than to her com-

mon law dower, he could defeat in the same manner as he could the succession of his heirs," citing Killinger v. Reidenhauer, 6 S. & R. 531, 536. This conclusion is based on a false premise; her rights do not depend on his act, they exist through legislation, and they are not on the same, but on a much higher plane than those "of his heirs." Her claim, being statutory, is superior to that of the heirs. Heirs as such have no ground for claiming fraud as against a testator, but the right of the wife has always been regarded as protected until the decision in this case. It is based on the contract of marriage reinforced by legislative enactment, and she cannot be deprived of it by will. Moreover, when the opinion in Killinger v. Reidenhauer, supra, was written, no statute existed fixing marital rights by permitting the wife to take against her husband's will, as is now the case.

In order to bring out my thought it will be necessary to review, to some extent, the authorities. The majority opinion quotes the statement from Lines v. Lines, 142 Pa. 149, 165: "It is the settled law of this State that a man may do what he pleases with his personal estate during his life. He may even beggar himself and his family, if he chooses to commit such an act of folly. When he dies, and then only, do the rights of his wife attach to his personal estate." It is no doubt true that where the transaction is in good faith a husband may make an absolute disposition of personal property by gift inter vivos to the detriment of his wife, but in such a case there must be an absolute separation of title from the husband, one that can be enforced against the donor. He cannot give it with a string attached, thereby keeping his hand on the property until he dies, and then call it an absolute gift. In giving it, he must separate himself entirely from it. This is well illustrated by our cases. Pringle v. Pringle, 39 Pa. 281, was a contest over an assignment or gift inter vivos of personal property, actually consummated by the husband. Judge SHARS-

WOOD, in reiterating the rule as to a husband's power over his personal property, says: "This is perhaps to be regretted, but it is too well settled now to be shaken." To support his reasoning he quoted from Judge GIBSON in Ellmaker v. Ellmaker, 4 Watts 89: "Who is so ignorant as not to know that a husband may dispose of his chattels during the coverture without his wife's consent, freed of every postmortem claim by her?" But that statement of Judge GIBSON was made in 1835, when a husband's dominion over his personal property was absolute. He could then dispose of it by gift or by will and his widow had no rights; but in 1848 this was changed and ever since that time a widow has had a right in the personal property of her deceased husband. No doubt what was meant was that the disposition by the husband must be complete, and the delivery vest a real title in the donee, enforcible by him as against the donor. In the same class of absolute gifts is Ross's App., 127 Pa. 4, where it was held that even as to these absolute gifts it must be clear that there is no evidence of "fraudulent intent" or no showing that the gift was "in fraud of the rights of the wife."

In Dickerson's App., 115 Pa. 198, a father set up trusts for his children fourteen years before his death, and the widow claimed these were made to defeat her marital rights. The father had named himself as trustee for his children, and the income from the trust went to the children from the moment the trust was created. He reserved the right of revocation, and, as trustee, he exercised control over the corpus. It was held that the trusts were valid inter vivos gifts to his children made "in good faith," and could not "be impeached on the ground that they are a fraud on the rights of the widow." The husband received no benefit from this trust. Justice STERRETT makes it clear that the power of the husband in disposing of personal property is limited by his exercise of good faith.

In Bouslough v. Bouslough, 68 Pa. 495, and Armstrong v. Connelly, 299 Pa. 51, the wife was a creditor and it was held that, under the Statute of Elizabeth, like any other creditor, she could set aside an absolute assignment when the intention was to defeat her claim for alimony or support.

There is another class of cases where the gifts even though absolute were without consideration, and the court has upheld the marital rights of the widow. In Hummel's Est., 161 Pa. 215, the husband executed five promissory notes, payable to collateral heirs after his death, and delivery of the notes was made during his life. They were given to avoid payment of the collateral inheritance tax and to deprive the widow of her share of his estate. Justice STERRETT said, "But fraud will render any transaction voidable at the instance of those who have been defrauded......and this should be especially true when the fraud is in violation of marital rights. The husband, standing as he does in a relation of contract and confidence, is bound to the *exercise of the utmost good faith;......no case has gone so far as to sustain a voluntary obligation given and received with intent to defraud the wife's rights. That she has an interest capable of being defrauded was settled in Mack's App., 68 Pa. 231.* True, until her husband's death, her interest is contingent," but as a creditor may be defrauded in respect to his contingent interest, "why not the wife?" [Italics above and below ours.]

In Young's Est., 202 Pa. 431, a husband assigned a mortgage to his daughter, and his widow claimed this was in violation of her marital rights. Justice MITCHELL there stated, "A married man's dominion over his personal property, ample as it is, *will not sustain a fraudulent gift of it in contemplation of death or to take effect upon death,* to defraud his wife's statutory rights as widow."

In Waterhouse v. Waterhouse, 206 Pa. 433, where the husband executed a bond to his brother for the purpose

of defeating the wife's marital rights, this court opened the judgment to permit the widow to show that the transaction was not in good faith, and was made for the purpose of defeating her marital claim.

A case having a more intimate relation to the case at hand is Lines v. Lines, supra. There a part of the trust property was in New York, where a married woman had no claim to a husband's personal property. By the trust deed for the other part, the settlor retained the right of revocation and a certain amount of control; but in that case the possibility of the disposition of the corpus was the controlling factor. Chief Justice Paxson said the trustee "could have distributed the corpus of the estate to the beneficiaries the next day...... The transaction was complete, and *the donor was absolutely denuded of his property.*" No question was there raised about the intention to deprive the wife of her marital rights, but, in our case, we have such intention, and a trust with control reserved and retained by the husband, the right of revocation, the right to all the income and to change of beneficiaries; this makes the case before us widely different from Lines v. Lines, supra. Moreover, Lines v. Lines was later virtually nullified by the decisions in Line's Est., 155 Pa. 378; and in Hummel's Est., supra; and Young's Est., supra, as to defrauding marital rights.

This brings us to Windolph v. Girard Trust Co., 245 Pa. 349, a case strongly relied on by the majority. There the settlor, the wife, transferred to the Girard Trust Company her "separate property." She reserved the income, the right to revoke, and a large amount of control. The referee found that there was not a scintilla of evidence to show an intent to defraud the husband of his marital rights; in fact, the settlor had stated she believed her husband was satisfied with the disposition of her separate property. This shows clearly that her motive was not to cut the husband out. There was no evidence before the referee to show *the deed of trust was gotten up as a subterfuge to take the place of a will.*

Both these facts are unmistakably present in the case now before us. The evidence was positive that the husband intended to defraud and deprive the wife of her marital right. In the Windolph Case the referee, the court below, and this court found that the deed was not a fraud upon the marital rights of the husband. Here lies another important distinction between that case and the present one, where, as stated above, the sole purpose and intention of the husband was to deprive his wife of her marital rights. The court below found in the instant case that the transfer was with fraudulent intent. In the Windolph Case there is a complete disavowment of this intention to defraud. While there was a certain amount of control left in the settlor, it was not to the extent reserved in the present case. Here the husband as settlor reserved to himself, without qualification, the entire income, the absolute right of control over the property even in the hands of the trustee, the right to change the beneficiaries, the right to revoke the trust and to recall possession of the property at any time, and it seems futile to say that he parted with anything or that he has actûally disposed of any of his property during his lifetime. With the exception of the Windolph Case the instant case is the only one where all these elements were present, and even without the specific intent here shown to eliminate the wife's marital rights, these elements all present having that effect should be sufficient.

A careful study of the Windolph Case also impresses one with the fact that the court was there dealing with "the separate property" of a married woman owned by her, property that was not the outgrowth of the very familiar situation we have noted above where property is accumulated through the joint efforts of both parties. Both this court and the referee were impressed with the idea that the wife was entitled to certain protection in disposing of this separate property, and rendered a decision to meet those facts. I see no difference between that class of property and other property, but if I am

correct on this point and the facts as stated above are so different from those in the Windolp Case, then the latter case is not squarely in point; and in a question of such importance as that here presented, any reason should be seized upon to avoid carrying the rule of the Windolph Case any further; and if none can be found it should be promptly overruled. My opinion is that it does not cover a situation such as we have before us today, nor should it be held to have overruled our previous rulings on this question.

Potter Title & Trust Co. v. Braum, 294 Pa. 482, is also submitted as being in point, but there were there at least two motives prompting the gift. The property was given as compensation to a son for work done, and also to defeat the wife's dower right. Furthermore, that was a case of *an absolute and irrevocable gift inter vivos,* and, as such, is clearly distinguishable from the present case where the donor parted with nothing in his lifetime.

We have had this situation respecting trust deeds, income, revocatory control and reservation of the right to change beneficiaries before us with regard to taxation in other cases, and the same questions were involved. In Dolan's Est., 279 Pa. 582, there was a deed of trust reserving control and the right of revocation, and providing for the substitution of trustees, but the income was immediately payable to the named beneficiaries; and we held such property could not be taxed as there was nothing left in the nature of property in the donor or settlor which could pass at his death. There was nothing the law could lay its hands on to impose the tax either through the right of succession or that of enjoyment. Later in Barber's Est., 304 Pa. 235, we held that where the settlor reserved to himself the income with a certain amount of control of the corpus, even though he had *no right of revocation, the absolute enjoyment of the property was not parted with until his death* and therefore it could be taxed. The principle there followed was, that since the *settlor reserved to himself something*

*which the law could seize or take hold of,* i. e., the beneficial use and enjoyment of the property, that something which was reserved to him and remained in him could be made the basis of taxation at his death. This right may be called the right of succession or the right of enjoyment, but whatever it is called, it is the same thing that is reserved here for the benefit of the widow. The cases are not to be distinguished by the fact that one arose under a taxation statute and the other involves the protection of marital rights. The taxing statute could not be given effect unless there was something in the settlor to attach. That something which carried the line of succession of the property for the purposes of taxation, was the enjoyment of it, and that same enjoyment of it by the settlor to the date of his death is the thing that here carries the line of succession to his beneficiaries, and it is at that point that the widow should be permitted to step in and claim her right.

Potter Title & Trust Co. v. Braum, supra, states: "It is true......a fraudulent intent will defeat the gift. Good faith is essential." The majority opinion concedes this. *What act is more fraudulent than a deliberate and acknowledged intent on the part of the husband to evade and frustrate the operation of an act of assembly, and to breach the contract of marriage and violate the rights that are part of it?* As stated in Duncan's App., 43 Pa. 67, such fraud would be strong enough to avoid any contract. Indeed, unless such facts as those outlined in this case are sufficient to show fraudulent intent, then that intent cannot be shown, and such expressions as "It is true a fraudulent intent will defeat a gift," and "Good faith is essential," are mere words and mean nothing. Such, however, is not the case. That fraudulent intent is shown by such acts is apparent from the cases. Waterhouse v. Waterhouse, supra, is perhaps one of the best illustrations of this. There the husband said, "Unless you sign a deed, I intend to leave the State and dispose of all my property." He did not leave the State, and he

did not dispose of the property. What he did was to give to his brother a chattel, a bond, and in a contest between the widow and the brother, wherein she claimed the gift was in fraud of her marital rights, we said: "The burden was on the plaintiff [brother] to establish by the preponderance of testimony, that the judgment was honestly confessed for a bona fide debt due him from the defendant. The power and duty of the court to aid the wife sought to be defrauded is well settled. In the......case of Wells v. Bunnell, 160 Pa. 460, we said: 'The law will lay its hands upon a fraudulent scheme to deprive the wife of her dower and will open or stay proceedings upon a judgment confessed without a full bona fide consideration.' There are many other authorities to the same effect. Of course, if the judgment was fraudulent and without consideration, the brothers would not openly proclaim their agreement as to its purpose; when the wife was to be cheated they would not call witnesses to their agreement." There was no other evidence of fraud in that case than the intention on the part of the husband to defeat the marital rights of his wife, and his brother joined in that purpose. There is similar evidence of fraudulent intention in our case, that the husband's intent was to defeat his wife of her dower, and that his counsel and the trust company joined in that purpose.

In Evans v. Dravo, 24 Pa. 62, the wife refused to join in her husband's conveyance unless a certain sum was paid. To induce her to join, it was arranged that the purchasers give a $2,000 bond to the husband. After the execution of the deed, he was to cancel and surrender the bond. This was a suit on the bond, and the court said: "The fraud contemplated consisted not in making the bond, but in the use that was to be made of it......the bond, being a chattel, was the exclusive property of the husband, yet a married woman has an interest in her husband's chattels—contingent, to be sure, but still such as may be defrauded." Hendrickson v. Evans, 25 Pa.

441, was a suit on the same bond, with a similar decision.

In Lonsdale's Est., 29 Pa. 407, an assignment of choses in action without consideration was designed to take effect at the death of the assignor. The court said: "On every ground we approve of the setting aside of assignments thus made, but especially on the ground that they were a fraud on the wife's rights;—and that a wife has an interest in her husband's chattels during coverture that may be defrauded." The mere transfer in this case was held to be all that was necessary to show fraud.

In Hummel's Est., supra, the mere giving of the notes without consideration was held sufficient to raise the question of fraud. In that case it is apparent that the giving of the bond for the purpose of defeating the wife's rights, was sufficient to show fraud. In Young's Est., supra, the gift standing alone was sufficient to raise the question of fraud. In all the cases we have recited, it seems the mere act of disposing of the property without consideration was held to show prima facie an intention to deprive the wife of her marital rights and was sufficient, in the absence of a showing of good faith, to prove the fraudulent intent.

There is another line of cases, apart from these gifts but analogous thereto, which hold that a voluntary disposition of property real or personal by a woman about to be married, is fraudulent as regards her intended husband, if the disposition is kept secret from him; and the husband after marriage or death of the wife may avoid the conveyance. A voluntary disposition in contemplation of marriage, without the knowledge of the other party, is void at the instance of the party affected, *where the beneficial use of the gift is retained by the donor,* (Duncan's App., supra) and even if it is not (Robinson v. Buck, 71 Pa. 386). In Duncan's Appeal, a woman executed a deed of trust without the knowledge of her intended husband. The court makes it emphatic that the husband's expectation was part of the contract of

marriage, and, though no fraud was intended, the mere transfer of property is sternly condemned "as a fraud upon his just expectations. ..... A fraud no greater than this would avoid any other contract than that of marriage; but as this cannot be avoided, equity avoids the contracts that are in fraud of it." We have upheld the doctrine of Duncan's App., supra, to the present time. Compare the fraud in that case with the fraudulent purpose shown in our case. The wife's just *expectation as widow* is a right that equity should protect under circumstances here related, and the conduct of the husband should be condemned by the court. Robinson v. Buck, supra, is a similar case. Judge THAYER in Baird v. Stearne, 15 Phila. 339, well outlines the rule governing such cases. In Potter v. The Fidelity Co. (No. 2), 199 Pa. 366, the same principle has been sustained. There the husband secretly made a deed of trust of personalty on the day of, but prior to, his marriage, reserving a life estate to himself, the remainder to his collaterals. The court held that the wife during the lifetime of the husband was not entitled to relief, and adopted the opinion of the lower court by WILLSON, J., which stated, "I, of course, do not intend to decide that the plaintiff [the wife] would have no right, upon the death of her husband preceding her own death, to ask that the deed of trust should be annulled to the extent of enabling her to take that share of the principal of the estate which would belong to her under the intestate laws, if no such deed of trust had been made. In my opinion she would undoubtedly have that right, but I think that until that time shall come she has no ground upon which she can successfully attack the validity of the deed in question."

The doctrine of fraud on marital rights should not be confined to people about to be married, and have no efficacy after they are married; a woman may be defrauded just as easily after the marriage as before. The marriage relation is based on "contract and confidence," and

persons in that relation owe to one another the strictest good faith in their mutual dealings. The rights of each are exceedingly high and if one right is higher than the other, it should be that of the wife. While the law cannot concern itself with disappointments in hopes, expectations, sentiment or romance, it does concern itself with those hopes and expectations that have materialized in the form of property owned before or acquired after marriage. To say that property does not have any substantial place in the rights of both parties (no matter in whose name it is held) is to deny to the married state one of its chief attributes. To hold that this right cannot be protected from abuse is virtually to deny its existence. Of what avail is it if either party can destroy the right of the other or treat it as has been done in this case? What the law has always undertaken in this State and what it should seek to protect for the wife's benefit is an interest in property "to be enjoyed at the time when the death of her husband would impose on her circumstances of dependency and need, when the customary support and protection of her husband are removed."

The decision of the majority places too great a power in the husband or wife. I doubt very much whether even the legislature can cure the situation. It has done all it can.

I would affirm the judgment of the court below.